Argued and submitted July 10, reversed October 12, 1981

In the Matter of the Marriage of

## BRUNE,
*Respondent,*
*and*
## BRUNE,
*Appellant.*

(No. 22746, CA A20342)

634 P2d 484

Constance C. Jarvis, Portland, argued the cause for appellant. With her on the brief was O. Timothy Moore, Portland.

Lyle W. Banton, Portland, argued the cause for respondent. With him on the brief were Robert B. Noggle, and Banton & Fulkerson, P.C., Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Husband seeks to terminate his $400 per month spousal support obligation. The trial court refused to modify the decree on the ground that husband failed to show a significant change of circumstances. The issue is whether wife's remarriage and economic arrangements with her present husband constitute a change of circumstances sufficient to justify termination.[1] We review *de novo*. ORS 19.125(3).

The decree of dissolution, entered in November, 1976, ended the parties' 29 year marriage, when they were both 47 years old. Wife was awarded all of the parties' real and personal property, with the exception of a 1972 Pinto automobile, which was awarded to husband. She received the family home, another house in Portland, a 1975 Volkswagen and six life insurance policies insuring husband's life. She was awarded $150 per month per child as child support, as well as the $400 per month permanent spousal support.

Husband is a family and marriage counselor. His 1980 income was $22,000, of which $1,200 was an estate administration fee. Husband has remarried, and his present spouse earns approximately $15,000 a year. Wife is a

---

[1] Husband claims that the following changes also justify termination:

(1) The formerly dependent children are emancipated and no longer in wife's custody;

(2) Wife has received $18,000 as proceeds from the sale of a house awarded her as part of the property settlement;

(3) Wife has received $7,000 in insurance proceeds as a result of a burglary; and

(4) Wife breached their agreement to terminate her support one year from date of wife's remarriage.

The emancipation of the children was anticipated by the divorce decree, which provided that child support would terminate upon that event. The proceeds from the sale of the house were also expected by virtue of the fact that the house was awarded to wife. Therefore, modification of the decree for those reasons is inappropriate. *Abraham v. Abraham,* 248 Or 163, 432 P2d 797 (1967); *McLean and McLean,* 46 Or App 367, 611 P2d 693 (1980). The insurance proceeds were compensation for lost property and do not constitute a "change" for the purposes of decree modification. Husband asked for specific performance of the termination agreement, but the agreement itself was not put in evidence. Wife denied entering such an agreement. Because of the result we reach, we need not decide the issue.

nationally recognized specialist in reading education. She has been employed as coordinator of a Portland high school reading room for 11 years. Her salary for 1980 was approximately $12,000.[2] She has completed sufficient college credits to achieve junior standing at Lewis and Clark College, but has not worked to complete her education since the death of a son.

On May 11, 1979, wife married Gordon Smith and established her residence in his home.[3] On the eve of their marriage, she and Smith entered into an antenuptial agreement, which provided, among other things:

> "Husband and Wife agree to, from their own personal estate, assume the necessary expenses of their support and maintenance."

Wife argues that, despite her remarriage, her financial condition has not changed, because she must still provide for her own support.

Wife's present husband has owned and operated a pesticide spraying business for six years. His 1979 adjusted gross income was $26,000, and he estimated his 1980 income to be between $21,000 and $22,000. He supports his parents, who live on his property, and two sons, 19 and 21 years of age. One son is in college; the other is serving as a missionary. Smith estimated his *combined* business and household expenses to be $3,000 per month.

Wife claims that because of her antenuptial agreement she now owes her present husband "thousands of dollars."[4] She testified she often never even sees her monthly paycheck because of her debts to her husband:

> "Well, I never even see my check because I owe my husband a lot of money. He keeps a record of all the things I owe him. Where I am now is I never see the [rental proceeds] for *[sic]* my house on Halsey because he makes the house payment and I owe him the rest of that money.

---

[2] She has held national reading workshops for which she receives $200 to $250 per workshop. She presented only one workshop in 1980.

[3] Wife was thus freed from a $431 monthly house payment, because she now rents her former residence for $575 a month and, according to the record, does not pay her present husband rent.

[4] Smith claims wife owes him approximately $3,300, the bulk of which is apparently attributable to a loan he procured in order to repair wife's former residence.

"Then I owe him money for things from *[sic]*my kids or insurance or something, whatever I couldn't pay, and I just give him my check every month."

She also stated that Smith takes care of all money matters and that she no longer has a bank account.[5] At the conclusion of the hearing, the court stated:

"It strikes the Court that the present position that the [wife] finds herself in is probably not as good and more than likely is worse than it was at the time of the decree.

"Now the [wife] has no burden in this particular matter and the [husband] does have the burden of trying to establish that there has been a significant change of circumstances. * * *[I]n light of the continuing indebtedness that the [wife] continues to accrue under what seems to this Court as an unusual marital relationship, I frankly don't find that there's been a sufficient showing of evidence in change of circumstance to warrant modification of the decree."

In *Grove and Grove,* 280 Or 341, 354-355, 571 P2d 477, modified 280 Or 769, 572 P2d 1320 (1977), the Supreme Court stated:

"Although this court has expressed the opinion that it was against public policy to permit a woman to look for her support to two different men, that policy has never been held to operate automatically without regard to the particular circumstances. * * * Public policy does not require that a woman whose first marriage has been dissolved be free to remarry only if her new husband is *able* to support her." (Footnotes omitted; emphasis supplied.)

We do not read that language as a complete rejection of the policy against permitting a woman to look for her support to two different men. We take it to mean that the remarriage of a divorced spouse is not, simply as a matter of law, a significant change of circumstances. While in particular

---

[5] Wife testified that she has needed glasses for a year but has not purchased them because she cannot afford them. She also stated:

"I don't have enough money to live on if I would go some place but almost every week — Mr. Smith has a very high beltline and almost every week he wants me out and he tells me my position in the home is priority and he said that he had his wife first and she died and then he had his boys and his mother and he names a lot of people, even down to the dog, and he said after the dog I come there and sometimes I object to the dog and he says, 'If you don't like the dog get the hell out. She was here first.'"

circumstances dual support may be justified, those circumstances will be the exception rather than the rule. *Grove* did not expressly change the earlier rule that in a proceeding to modify the spousal support portion of a divorce decree, once a remarriage of the supported party is shown, the burden of proving that circumstances have not significantly changed rests with that party. *Nelson v. Nelson,* 181 Or 494, 500, 182 P2d 416 (1947); *Phy v. Phy,* 116 Or 31, 36, 236 P 751, 240 P 237 (1925); *Reed v. Reed,* 12 Or App 371, 374-375, 507 P2d 55 (1973).

Regardless of who had the burden of proof, the trial court found that the evidence of wife's "indebtedness" to her present husband prevented a finding of a change of circumstances to warrant modification of the support obligation. Apart from the antenuptial agreement, there was no documentary evidence of any of wife's "debts" to her present husband. It appears that she simply handed him her check every month. While this could be construed, by a substantial exercise of imagination, as evidence of indebtedness, it is more fairly to be taken as showing that Smith controlled the purse strings, which, although perhaps increasingly unpopular, is still not an uncommon practice among married couples. Although we question whether either party could enforce the antenuptial agreement,[6] the fact is that they are not *now* abiding by its terms. Furthermore, we find that Smith is in fact supporting her in part. Wife's economic circumstances have been enhanced substantially in that she is relieved of the need to provide a separate residence for herself.

It would be harshly inequitable to require husband to support his former wife simply because her present husband might refuse to do so. We are not at all persuaded that he is unable to do what he is under a statutory duty to do. *See* ORS 108.110.

In these circumstances, which we find to be changed very substantially since the original decree, the proper course is to terminate spousal support.

Reversed. Costs to appellant.

---

[6] *See Unander v. Unander,* 265 Or 102, 107, 506 P2d 719 (1973).