Argued and submitted June 13, 1984, resubmitted In Banc January 16, decree
modified May 15, reconsideration denied July 12, petition for review allowed
August 20, 1985 (299 Or 663)

In the Matter of the Marriage of

BATES, nka Nelson,
*Respondent,*

*and*

BATES,
*Appellant.*

(37865; CA A30344)

699 P2d 678

Mark L. B. Wheeler, Salem, argued the cause and filed the brief for appellant.

Allyn E. Brown, Newberg, argued the cause for respondent. With him on the brief was Brown & Tarlow, P.C., Newberg.

RICHARDSON, J.

Warden, J., dissenting.

## RICHARDSON, J.

On the basis of wife's remarriage, husband seeks modification of their dissolution decree to terminate his spousal support obligation of $600 per month plus 10 percent of any bonuses received. The trial court eliminated the portion of the decree concerning the bonuses but retained the requirement that husband pay wife $600 per month. Husband appeals. We modify the decree to eliminate the $600 per month spousal support obligation.

The parties were married for almost 26 years before their November, 1982, dissolution. At the time of trial, husband was 46 and wife was 44. The parties had four children. Three were emancipated, and one son was a minor. Before their separation, the parties had begun proceedings to adopt a 12-year-old foreign-born girl. The dissolution proceedings were begun by the parties before the adoption was completed. At wife's urging, husband agreed to complete the adoption, and wife agreed to assume sole responsiblity for the adopted daughter. Wife was awarded custody of the minor son and the adopted daughter.

For the first four years of the marriage, wife worked as a typist while husband attended college. She has no formal education beyond high school, except for one semester of an office practice class at a community college. After husband graduated from college, she quit working to raise the family. Husband began working for a mobile home manufacturer after graduation, and he was eventually promoted to general manager. Wife later worked for one year as a bookkeeper for a stationery store and, at the time of the dissolution trial in 1982, had worked as a bookkeeper for a law firm since October, 1980.

During the later years of their marriage, before their separation, the parties enjoyed an affluent lifestyle. They had substantial real estate holdings, including several residential rental properties and a beach house where they often vacationed. Their lifestyle was possible largely because of the substantial bonuses husband received from his employment. His base salary was approximately $50,000. He earned bonuses that often equaled or exceeded the base salary. For example, in 1977 his total gross income was $124,000. However, because of an economic downturn in the mobile home

industry, he earned steadily less after 1977 and, in 1982, the total family income was $62,641. Husband testified at the dissolution trial that he expected no further bonuses after 1981. He confirmed that projection at the hearing on the motion to modify the decree. At the time of the modification hearing his base salary was $55,000 per year.

At the time of the dissolution trial, wife was working part time earning $5.50 per hour. She testified that she intended to begin working full time. The trial court found she was employable at a gross annual salary of $10,000 to $12,000. She quit her job when she remarried in order to stay home with the adopted daughter.

The decree of dissolution awarded wife two duplexes and a single family rental house. At that time, the three rental properties generated approximately $264 per month net income. Wife testified at the modification hearing that she had no positive cash flow from the rentals because some tenants had moved and she had had to spend approximately $1,000 for repairs. Husband received a single family residence, which he rents, and the beach house, which is rented on an irregular basis. The record does not disclose the rental income that he receives.

Pursuant to the decree, the family residence was sold and each party received $43,000 from the sale proceeds. Consistent with her testimony at the dissolution trial, wife utilized a portion of the sale proceeds to purchase a house with her new husband. She supplied $30,000, and he provided $20,000 of the down payment on a purchase price of $92,000.

Wife was also awarded $20,000 in certificates of deposit which generate $160 per month interest income. Husband was awarded a $10,000 certificate of deposit, from which he receives approximately $70 per month interest.

Husband's present employer does not provide him a retirement plan. However, a former owner of the business did. He has a paid-up, vested plan with an account balance of approximately $27,000. There is no evidence in the record concerning the contours of the retirement plan, such as when he can receive retirement benefits or how much he will receive.

During the dissolution trial, the court stated:

"* * * [I] am going to award the [Husband] all of his interest in the retirement program. I am doing that for two reasons, again. First reason is to balance off some of the inequity as far as the household goods and furnishings are concerned. But in addition to that, I am going to award permanent spousal support. And it's reasonable to assume that in the years in the future at least that the payment of that spousal support if it continues at that time and he receives retirement and will be obligated, that will be paid from the retirement. * * *"

It is clear that the court was utilizing the retirement account in some measure to equalize the property division. Wife was awarded the furnishings of the family home, which had a substantial value. The court awarded wife $600 per month spousal support, plus ten percent of any bonuses husband received.

Husband moved to modify the decree to transfer custody of the minor son to him, to terminate his child support obligation, to require wife to pay child support and to terminate the spousal support obligation. The court changed custody of the minor son and ordered wife to pay $100 per month child support. The court eliminated the provision requiring husband to pay ten percent of his bonuses to wife but left intact the $600 per month support.

At the time of the October, 1983, modification hearing, both parties had remarried. Wife had married a state policeman, whose annual gross income exceeded $28,000, and had quit work to raise the adopted daughter. Her new husband had no children living with him but pays $450 per month for spousal and child support. Husband had remarried, and his new wife was physically unable to work. He was earning $55,000 per year but had received no bonuses since the dissolution and, as indicated, he predicted that there would be no bonuses in the foreseeable future, due to the continuing recession in the mobile home industry.

In determining whether a spousal support award should be terminated upon remarriage of the dependent spouse, we have utilized the basic analysis set forth in *Nelson v. Nelson,* 181 Or 494, 499-500, 182 P2d 416 (1947):

"The remarriage of a divorced wife does not *ipso facto* cancel the obligation to pay the installments of alimony

awarded her by the decree. * * * Nevertheless, it is such a change in the situation of the parties as to furnish the court a cogent reason for modifying the decree. * * * It would not be good public policy to compel a divorced husband to support his former wife after she had remarried, except under extraordinary conditions which she should be required to prove. * * *" (Citations omitted.)

The Supreme Court has neither overruled nor altered the basic policy statement in *Nelson.* In *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977), the court held that remarriage of the dependent spouse does not automatically terminate the spousal support obligation. The court said:

"Public policy does not require that a woman whose first marriage has been dissolved be free to remarry only if her new husband is able to support her." 280 Or at 355.

The court did not delineate the analysis for modification when remarriage of a dependent spouse occurs.

Although we have used a variety of phraseologies in discussing the analysis, a basic tenet remains: The public policy stated in *Nelson* can be disregarded only when extraordinary conditions exist. *See Wilson and Wilson,* 62 Or App 201, 660 P2d 188 (1983); *Brune and Brune,* 54 Or App 169, 634 P2d 484 (1981); *Carter and Carter,* 54 Or App 86, 634 P2d 265, *rev den* 292 Or 109 (1981); *Reed v. Reed,* 12 Or App 371, 507 P2d 55 (1973).

The lifestyle which the parties enjoyed during the later years of the marriage had been substantially reduced by the time the decree of dissolution was entered. Had the parties remained married, they would have been forced to make substantial adjustments in their living standard. Wife testified at the modification hearing:

"Q   [By wife's attorney] Has your standard of of living — how is your standard of living now compared to the standard of living you had when you were married to Mr. Bates?

"A   Well, I would say it leaves out the luxury items, leaves out expensive vacations and nice clothes. You know, we can get by with the basics, we can pay the basics. We just don't —

"Q   Will you be able to afford the vacation trips you did with Mr. Bates?

"A   Not unless we would take the money out of savings. Never be the bonuses we had to do them with or something like that.

"Q   Are you going to be able to get the new cars you used to get periodically with Mr. Bates?

"A   No."

As a practical matter, when a marriage is terminated by dissolution it is rarely possible to continue the same lifestyle in two households that previously pertained in one. Of necessity, both parties must make financial sacrifices. The desire to afford certain luxuries of life to which a party has become accustomed is not an extraordinary circumstance that justifies disregarding the public policy identified in *Nelson v. Nelson, supra,* and ORS 108.110.

We conclude that wife has not sustained the burden of proving that extraordinary circumstances exist. *Wilson v. Wilson, supra.* As we stated in *Ward v. Ward,* 41 Or App 447, 599 P2d 1150, *rev den* 288 Or 141 (1979), "[the former] husband is not a life-long guarantor of a higher standard of living." 41 Or App at 452.

In view of our elimination of the spousal support obligation, the financial circumstances that led the trial court to order wife to pay $100 per month child support are altered. We conclude that wife's child support obligation should be eliminated.

Decree modified to eliminate husband's spousal support and wife's child support obligations. No costs to either party.

**WARDEN, J.,** dissenting.

The issue is whether husband's obligation to make monthly payments of spousal support to wife should be terminated because of wife's remarriage. On *de novo* review, ORS 19.125(3), the majority concludes that it should and reverses the trial court. I dissent.

In *Carter and Carter,* 54 Or App 86, 634 P2d 265, *rev den* 292 Or 109 (1981), in an opinion written by the author of the majority opinion here, we said:

"In *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified*

280 Or 769, 572 P2d 1320 (1977), the court held that remarriage of a dependent spouse did not automatically terminate the spousal support obligation. Reduction or elimination of spousal support must be based on a change of circumstances relative to the support award, and remarriage of the dependent spouse is one factor to be considered. One of the principle purposes of spousal support identified in *Grove* is to provide the dependent spouse with a standard of living reasonably commensurate with that enjoyed during the marriage.

"* * * * *

"The critical inquiry in determining if spousal support should be terminated is whether the wife's present circumstances enable her to enjoy a standard of living reasonably commensurate with that enjoyed during her former marriage." 54 Or App at 89.

During the last years of the marriage the parties had enjoyed a very high standard of living, supported by husband's base salary of $55,000 and bonuses ranging from $7,641 to $69,000. Although neither party has been able to continue living at the standard allowed by income in those amounts, since the dissolution wife's standard of living has been depressed much more than has husband's.

Husband testified that he had a total net monthly income at the time of the hearing of $3,448.18. That sum is available to him to support himself, a son of the parties and husband's present wife. Additionally, under the court's order, wife is required to contibute $100 per month toward the support of the son. (She has not appealed that provision.) In contrast, wife, the adopted daughter of the parties and wife's present husband have net expendable income of $1,070.86 for their support. From wife's present husband's net monthly pay of $1,620.86, he is required to make payments of spousal support and child support totaling $450 which, together with wife's support obligation of $100, leaves them but $1,070.86. Wife's part-time job as a bookkeeper would have added no more than $600 a month to the sum available to support her present family.

Neither party is now able to maintain the standard of living enjoyed during the years in which husband received large bonuses. After more than 25 years of marriage, however, wife is reduced to living at a near poverty level while husband continues to enjoy a standard of living not markedly lower

than that he enjoyed during the marriage. Their sacrifices ought to be proportionate, but under the majority's decision they will not be. While wife has been supplementing her family's income by liquidating capital assets awarded her in the dissolution, husband has been able to maintain his equal capital assets intact. His retirement fund, the award of which gave him the long half of the marital estate and which was awarded to him so that he could meet permanent spousal support obligations, is now his alone, and he is freed from using it to fulfill the duty to support. He is also free from dividing with wife any future bonuses which he may receive. The trial court correctly concluded that, despite the remarriage, the reasons for awarding spousal support are still present. To decide as the majority does works a palpable injustice. I would affirm the trial court; accordingly, I dissent.

Gillette and Van Hoomissen, J. J., join in this dissent.