Argued and submitted September 30, 1985, affirmed as modified March 17, 1987

In the Matter of the Marriage of

BATES,
nka Nelson,
*Petitioner on Review,*
*and*

BATES,
*Respondent on Review.*

(TC 37865; CA A30344; SC S31877)

733 P2d 1363

Allyn E. Brown, Newberg, argued the cause for petitioner on review. With him on the petition and memorandum of additional authorities was Brown & Tarlow, P.C., Newberg.

Mark L. B. Wheeler, Salem, filed a response and argued the cause for respondent on review.

CARSON, J.

## CARSON, J.

This case presents the issue of what analysis should be applied in determining the effect of the remarriage of a supported spouse on a previous award of spousal support.[1]

The case involves the modification of a dissolution decree in which the trial court originally awarded wife $600 per month and 10 percent of her husband's employment bonuses as permanent spousal support.[2] Several months later, wife remarried and husband moved to modify the decree to eliminate the award of spousal support. The trial court eliminated the bonus provision but retained the $600 per month part of the original decree. The Court of Appeals, *in banc,* with three judges dissenting, reversed the trial court and terminated the full amount of spousal support. *Bates and Bates,* 73 Or App 530, 699 P2d 678 (1985). In reaching its decision, the court relied on a 40-year-old case, *Nelson v. Nelson,* 181 Or 494, 182 P2d 416 (1947), where this court stated:

> "* * * It would not be good public policy to compel a divorced husband to support his former wife after she has remarried, except under extraordinary conditions which she should be required to prove. * * *" 181 Or at 500. (Citations omitted.)

Wife, in her petition for review, contends that the Court of Appeals failed to consider the more recent case of *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977). We allowed review in order to consider the effect of remarriage on an award of spousal support in light of *Grove,* the 1983 amendments to the support award statute, ORS 107.105(1)(d), and the modification statute, ORS 107.135. We now affirm the Court of Appeals but on different grounds.

---

[1] Many lawyers and commentators have continued to use the term "alimony" in discussing the maintenance awarded to a party upon dissolution, but the statutory term is "spousal support." ORS 107.105.

[2] Spousal support awards are described as "permanent" in the sense that they are of an indefinite duration, as distinct from awards having a termination date specified in the decree. *See Grove and Grove,* 280 Or 341, 348 n 5, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977).

## VALIDITY OF THE *NELSON* RULE FOR REMARRIAGE

■ The Court of Appeals decided this case believing itself bound by the *Nelson* statement delineating "good public policy." Such assertions, unsupported by cited sources of public policy, merely represent the policy views of judges serving at a particular time; they do not bind later courts.

⸴ In *Grove and Grove, supra,* this court held that remarriage is not, as a matter of law, grounds for termination of spousal support. 280 Or at 355. *Grove* recognized, in its interpretation of the support statute, that a support award was intended, in part, to make up for opportunities to become self-supporting by one spouse that were sacrificed to a homemaking role. 280 Or at 351-52. *Grove* further reasoned that the standard of self-support is not that required for subsistence; rather, this court approved the Court of Appeals' comparison to the standard of living during the marriage. Finally, *Grove* considered the contribution of the homemaker spouse to the marriage to be relevant to a spousal support award.

Subsequent amendments to the support statute in 1983, effective after the original decree and modification order in this case, elaborate on this theme. We believe that the amendments reflect prior law, both statute and caselaw, sufficiently that they can be consulted as guidance for this case.

ORS 107.105(1)(d) provides that:

"* * * in making such support order, the court shall consider the following:

"(A) The length of the marriage;

"(B) The age and the physical and mental health of the parties;

"(C) The contribution by one spouse to the education, training and earning power of the other spouse;

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)    The length of absence from the job market and a realistic appraisal of suitable job opportunities available to a party considering the age of the party and the length of time reasonably anticipated to obtain training or updating of career or job skills;

"(G)    The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H)    The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits, and the decree may state the court's findings relating to net spendable income of each party if such statement is requested by either party;

"(I)    The amount of long-term financial obligation, including legal fees and costs;

"(J)    Costs of health care to a party;

"(K)    The standard of living established during the marriage;

"(L)    Premiums paid for life insurance on the life of a party ordered to pay support; and

"(M)    Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

Some of the purposes behind spousal support as reflected in the above-stated considerations are not altered or ended by remarriage. For example, a return on the "contribution of one spouse to the education, training and earning power of the other spouse" in subparagraph (C) continues, as do the costs of becoming "self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage" and "the length of time reasonably anticipated to obtain training * * *" set forth in subparagraphs (E) and (F). The intent behind subparagraphs (K) and (M) to preserve the parties' "standard of living established during the marriage" remains as a gauge of the continuing fairness of the support award, even after remarriage. Whatever weight *Nelson* carried in 1947, it has since been superseded by statute and no longer governs modifications of support obligations upon remarriage.

## SPOUSAL SUPPORT IN THE PRESENT CASE

On review of a modification decision we begin, as the trial judge must, with the position of the parties as established by the original decree, or by any modification decision immediately preceding the case at issue. The initial spousal support award represents a trial judge's (or, if appealed, an appellate court's) assessment of the amount and duration of support best calculated to meet the considerations enumerated in ORS 107.105(1)(d).[3]

At the dissolution proceeding in the present case, the trial court divided the parties' property pursuant to their stipulations. Each received approximately $140,000 in cash and real estate. The family home was to be listed for sale, and the proceeds of the sale were to be split equally. The parties were unable to agree on matters of child support, spousal support, the value of certain personal property and the division of husband's retirement account. The court settled these disputes. Only modification of the spousal support is at issue here.

The trial judge originally awarded wife $600 in spousal support as well as 10 percent of the gross amount of any bonuses that husband should receive from his employment. The court based this determination, in part, on a finding that wife could earn between $10,000 and $12,000 per year. Husband's salary was $55,000 per year plus bonuses ranging from $7,641 in 1982 to $69,000 in 1977. Without including these bonuses, the trial court's award meant that husband's wages were approximately $4,580 per month and wife's potential income from wages was approximately $916 per month. The trial court's award of spousal support meant that husband's income would be decreased to $3,980 per month and

---

[3] A modification hearing does not present the opportunity to reevaluate everything decided in the initial decree. This is obvious from the language of the support award statute itself, ORS 107.105, which states that its factors are to be considered "[w]henever the court *grants* a decree of marital * * * dissolution." (Emphasis added.) The statute says nothing about its applicability in a modification proceeding.

An initial spousal support decree which has not been appealed, or which has been revised upon appeal, is a judicially determined dollar figure based upon legislative instruction. Although a party may go behind the initial decree on modification in order to explain the background of a case, a party may not go behind the decree and reargue the validity of an original support award.

wife's would be increased to approximately $1,516 per month. In an attempt to put the parties on a more even level, the trial court also awarded wife 10 percent of husband's potential bonuses (a 10 percent award would have ranged from $764 in 1982 to $6,900 in 1977). In sum (and excluding the potential bonuses), the decree left wife with a potential monthly income of $1,716, including child support, and husband with a monthly income of $3,780, minus child support.

■ At the time of the modification hearing,[4] husband alleged a change in circumstances because wife had moved out of the family home, which had been too expensive to maintain, and because wife had remarried.[5] Regarding the first contention, we do not believe that wife's moving out of the family home is a change that affects the spousal support awarded in the initial hearing. The sale of the home was contemplated by both the trial judge and the parties at the initial hearing and was therefore taken into account at that time.

■ We agree that remarriage of the supported spouse may represent a change in circumstances; as we have pointed out, however, it will not automatically terminate a spousal support award. This is so because remarriage of a supported spouse will not always supplant the purposes behind the initial award. Support should be terminated when the purposes of the initial award have been met.

We are unable to discern from this record how much or whether any part of the initial award represented wife's "contribution * * * to the education, training and earning power" of husband, or wife's "need for education, training or

[4] The modification statute is ORS 107.135(1)(a), which provides, in part:

"The court has the power at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party * * * to:

"Set aside, alter or modify so much of the decree as may provide * * * for the support of a party * * *."

[5] As amended in 1983, after the modification decision in this case, ORS 107.135(2)(a) now explains changes in circumstances:

"In a proceeding under subsection (1) of this section, changes in circumstance sufficient for the court to reconsider the spousal or child support provisions of the decree include but are not limited to:

"A substantial change in the cost of reasonable and necessary expenses to either party."

retraining." Lacking such information, our task is to maintain the relative positions of the parties as established in the initial decree in light of their changed circumstances.

In the instant case, both parties remarried. Husband's base salary has remained the same. However, we accept husband's testimony that he no longer would be receiving bonuses because of the economic downturn in the mobile home industry, in which he was employed. His present wife is physically unable to work outside the home and the custody of the son of husband and wife has been transferred to husband. As a result, husband has a stationary income level and his household has increased in size from one, at the time of the original award, to three, at the time of the modification hearing.

Meanwhile, when wife remarried, her potential shared income rose to $2,833 per month without any support from her former husband. This figure reflects the gross monthly income from wife's present husband (less $450 in his child and spousal support obligations) of $1,917[6] plus the $916 per month that the court originally determined wife has the ability to earn. And while the remarriage did add another adult to wife's household, the change in the custody of her son resulted in no actual change in the size of that household. In sum, wife has a present potential income of $2,833, apart from spousal support, and husband's income would increase to $4,580, if he were free of his child and spousal support obligations.

The original support award presumptively reflects the most equitable distribution of income between the parties. In this case, there is no indication that the initial support award encompassed sums other than those intended to achieve "an economic standard of living not overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(M). As a result of the remarriage, wife now has available for the support of herself and her family an additional $1,117. To continue spousal support would provide wife's three-person household[7] with significantly more money

---

[6] Wife, in her petition for review, asserts that her present husband's gross monthly income is $2,367.

[7] As a part of the original decree, the parties stipulated that husband would not contribute child support for the parties' adopted daughter.

than the trial judge originally found to represent an equitable distribution of income. For these reasons, we conclude that spousal support should be terminated at this time.

The decision of the Court of Appeals, modifying the decision of the trial court, is affirmed.[8]

---

[8] We affirm as well the elimination, by the the Court of Appeals, of a child support award of $100 due from wife to husband.