Argued and submitted March 31, 1995, affirmed February 28, 1996

# In the Matter of the Marriage of

## Jean Ann GANGER,
## fka Little,
### *Respondent,*
### *and*

## C. Bruce LITTLE,
### *Appellant.*

## (DO92-325; CA A85142)

911 P2d 1276

Michael W. Ballard argued the cause and filed the brief for appellant.

Beverly D. Richardson argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Husband appeals from an order modifying a judgment of dissolution, in which the trial court denied husband's motion to modify or terminate spousal support and his motion seeking increased visitation. Husband also appeals from a supplemental judgment awarding wife attorney fees. We affirm.

The court entered a judgment dissolving the parties' 16-year marriage on October 23, 1992. At the time of the dissolution, husband and wife had five children, ages 13, 10, 7, 3, and 1. The judgment of dissolution ordered husband to pay wife spousal support of $400 per month for a period of two years, $300 per month for the next two years, and $200 per month for the final two additional years. The judgment also granted custody of the children to wife, subject to specified visitation for husband.

At the time of the dissolution hearing, wife had an associate degree in dental hygiene and had worked sporadically as a dental hygienist until 1989, when she devoted her energies to homemaking. The trial court noted wife's potential difficulty in entering the work force, but found that she should be able to earn a minimum wage of $823 per month. Husband had been employed in construction work and had an average monthly gross income of $2,291.

In November 1993, wife remarried. At that time, wife was working only one day per week and earning approximately $720 per month. Wife's new husband was earning $1,423 per month, and husband's monthly income had increased to $2,845. Husband moved to modify the dissolution judgment to accurately reflect his right to mid-week visitation, to add a requirement that the parent supervising the children must notify the other parent if medical attention is sought for any child, to terminate or reduce spousal support on the ground that wife's remarriage constituted a substantial change of economic circumstances, ORS 107.135(2)(a), and to increase summer visitation from three weeks to six weeks.[1] ORS 107.135(1)(a). The trial court entered an order modifying the judgment of dissolution with

---

[1] Yamhill County's Standard Visitation Rule 8.085 would have allowed husband six-weeks' summer visitation.

respect to husband's right to mid-week visitation and notification of medical services. However, the court denied husband's motions to terminate or reduce spousal support and to increase his summer visitation.

■      Husband first assigns error to the trial court's denial of his motion to terminate or reduce his spousal support obligation. As a preliminary matter, husband argues that the trial court erroneously placed on him the burden of proving that wife's remarriage constituted a substantial change in circumstances. Husband contends that wife has the burden of proving that the conditions that necessitated support continue after her remarriage and that she failed to carry that burden.

In *Fouts and Fouts*, 98 Or App 483, 486, 779 P2d 145, *rev den* 308 Or 660 (1989), we held that remarriage is to be considered in the same manner as any other change of circumstance:

> "ORS 107.135(2)(b) authorizes the modification or termination of a spousal support award when there has been a substantial change in the parties' economic circumstances. As stated in [*Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987)], remarriage may result in such a change. However, nothing in the statute suggests that the economic effects of remarriage should be treated differently than any other change of circumstances. Accordingly, we conclude that there is no authority or justification for shifting the burden of proof in cases where the alleged change of circumstances is remarriage."

Husband argues, however, that our decision in *Fouts* is inconsistent with our later decision in *Haywood and Haywood*, 120 Or App 339, 852 P2d 891 (1993), and to the extent that they are inconsistent, *Haywood*, as the later case, must control. We conclude that to the extent that there are inconsistencies in the two opinions, the reasoning of *Fouts* is correct.

The pertinent language from *Haywood*, on which husband relies, is our statement that:

> "Although remarriage does not automatically result in termination of spousal support, it is a circumstance that can

justify modification or termination, *unless the dependant spouse can 'show that her need for support continues substantially as it was originally.' Ho and Ho*, 93 Or App 421, 424, 762 P2d 344 (1988); *see also Bates and Bates*, 303 Or 40, 733 P2d 1363 (1987)." *Id.* at 341-42 (emphasis supplied).

That language certainly does imply that the burden shifts to the dependent spouse when that spouse has remarried. However, for the reasons that we discussed in *Fouts*, that implication is incorrect. It is not supported by the decisions in *Ho* or *Bates*, on which it relies, nor is it consistent with the pertinent statute, ORS 107.135(2)(a).

The above quoted passage from *Haywood* is based, in material part, on a quote from *Ho and Ho*, 93 Or App 421, 424, 762 P2d 344 (1988):

"Remarriage does not automatically result in termination of a spousal support award, but it is a circumstance that can justify modification, *unless the dependant spouse shows that the reasons for the original award exist.*"

In *Fouts*, we specifically noted that our refusal to adopt a burden shifting approach when the obligee spouse remarries did not conflict with *Ho*:

"Our conclusion * * * is not inconsistent with our opinion in *Ho and Ho*, 93 Or App 421, 762 P2d 344 (1988), where we held that the husband's presentation of evidence as to the wife's change in employment and domestic association was sufficient to justify modification or termination of the spousal support, 'unless wife were to show that her need for support [continued] substantially as it has originally. 93 Or App at 424. In this case, husband presented no evidence regarding changes in wife's circumstances, other than the fact that she has remarried." *Fouts*, 98 Or App at 487.

We continue to believe that our interpretation in *Fouts* of *Ho*, as describing the obligee spouse's burden of *rebutting* the obligor spouse's evidence instead of the initial allocation of the ultimate burden of proof, is correct. As we explained in *Fouts*, nothing in *Bates*, or in the pertinent statute, ORS 107.135(2)(a), requires that remarriage be treated differently than any other economic change of circumstances. Consequently, the trial court here properly

placed the burden on husband to prove that wife's remarriage constituted a substantial change of economic circumstances under the statute. *See Morrison and Morrison,* 139 Or App 137, 910 P2d 1176 (1996).

██ Husband argues, in the alternative, that even if he has to prove a substantial change of economic circumstances, he satisfied that burden. When we are assessing whether a remarriage has resulted in a substantial change in circumstances justifying modification of a spousal support award, we need to examine whether "the purposes of the initial award have been met." *Bates,* 303 Or at 46. The "purposes of the initial award" refers to the statutory factors (found in ORS 107.105(1)(d)) that guide a court's decision to grant spousal support. *Hall and Hall,* 86 Or App 51, 738 P2d 218 (1987). If those purposes cannot be identified, then the court's task is to "maintain the relative positions of the parties as established in the initial decree in light of their changed circumstances." *Id.* at 54.

Here, we are able to discern the principal purposes of the initial spousal support award from the record. At the original dissolution hearing, the trial court commented on the spousal support award:

"What I am looking at, frankly, is some sort of a step-down over a period of years. But ending, well, at this point I am thinking it will end in six years. All the children will be in school by then, and presumably, I recognize [wife] got a big job here. Five children is a load, even though some of them are in school. And accepting she has some health difficulties, it will take awhile to get back into the work force, doesn't make any — doesn't make any sense to go back into the work force unless you make enough money to offset the child care.

"If you got two young kids or three young kids, and got to send them to child care every day, you will end up with barely minimum wage by the time it is all over. I recognize there [are] some problems that have to be dealt with there. That's what I am thinking of right now."

Based on those comments, the step-down nature of the spousal support award, and its limited duration, it is apparent that the court awarded wife spousal support to give her time to obtain the required job experience, training, or education

to enter the work force and earn an adequate income considering her child care costs. *See* ORS 107.105(1)(d)(E) and (F).[2]

After reviewing the evidence here, we conclude that wife's remarriage has not satisfied the purposes behind the original spousal support award. As of the time of the modification proceeding, wife had been unable to make a successful reentry back into the workforce. Wife testified that in December 1993, she had gone back to work as a dental hygienist, working two to three days per week. However, she had to stop working in February 1994, because she was experiencing pain in her shoulders. She then received physical therapy two to three days a week through the third week of March 1994, when she attempted to return to work. However, from then until the time of the modification hearing, she was able to work only one day per week, earning $720 per month, in an effort to "balance the need for income with the pain in [her] shoulders." Accordingly, wife's ability to earn $823 per month, as the trial court anticipated, is questionable. Wife's new husband's income of $1,423 per month presumably reduces some of the financial pressures on wife. However, it is evident that that income does not alleviate her need to pursue employment, and there is considerable uncertainty as to the extent to which her new husband's income

[2] ORS 107.105(1)(d) provides, in part:

"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order the court shall consider the following:

"* * * * *

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills."

will help in that endeavor. At the time of the modification hearing, the new husband had just returned to work following a seven and one-half week absence due to his need to be hospitalized twice for pleurisy and pneumonia. Those illnesses caused new husband to incur $17,600 in medical bills, some portion of which may not be covered by husband's medical insurance. Moreover, the trial court found that husband's income had increased $550 per month. Based on all of these facts, we agree with the trial court that husband failed to prove that wife's remarriage constituted a substantial change of economic circumstances, which would justify termination or modification of the original spousal support award. The trial court properly denied husband's motion to terminate or modify his spousal support obligation.

Husband next assigns error to the trial court's denial of his motion to increase the length of his right to summer visitation with his children. We conclude that the court properly denied that motion and that further discussion is not warranted.

Finally, husband assigns error to the trial court's award of attorney fees to wife. The trial court did not abuse its discretion in awarding wife attorney fees. *Richardson and Richardson*, 307 Or 370, 769 P2d 179 (1989).

Affirmed. Costs, not including attorney fees, to wife.