Argued and submitted April 23, 1999, reversed and remanded February 23, 2000

In the Matter of the Marriage of

Jeanine Marie RUBEY,
*Respondent,*
*and*

Kevin Vernon RUBEY,
*Appellant.*

(95-1428-D-3; CA A102950)

996 P2d 1006

Douglas J. Richmond argued the cause for appellant. With him on the brief were Matthew Sutton and Kellington, Krack, Richmond, Blackhurst & Sutton.

Clayton C. Patrick argued the cause for respondent. On the brief was Craig S. Galpern.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Husband appeals from the trial court's denial of his motion to terminate spousal support. He argues that, since wife's remarriage, there has been a substantial change of circumstances that eliminates the need for any further spousal support. We review *de novo*, ORS 19.415(3), and reverse and remand.

The parties met in 1979, while husband was employed at 3M and wife was a college student. They lived together for two years and were married in 1981. At the time of the marriage, wife was within a few credits of completing her college education but did not do so. The couple's first child was born in 1982, and they agreed that wife would stay at home while husband worked.[1] Husband's work for 3M required them to move frequently; over the next 15 years they lived in five different states and Great Britain. The couple's second child was born in 1986. Husband continued to work for 3M, becoming the director of manufacturing of Imation, a new company that was created as a spin off of several 3M divisions.

The parties moved to Oregon in 1994 and separated in 1995. Their marriage was dissolved in 1996. At the time of the dissolution, their children were 14 and 10 years old. The dissolution judgment ordered husband to pay wife child support and also to pay spousal support for six years. The judgment provided for spousal support of $1,625 per month for the first three years and $1,250 per month for the final three years. The court awarded wife spousal support

> "in recognition of the employment opportunities she has foregone in order to stay home and raise the parties' children in accordance with their parenting plan. The step-down level of support has been fashioned in anticipation that [wife] will be obtaining certification as a veterinarian assistant or other advanced training. It is anticipated that her earning potential will increase after she attains that certification or other advanced training."

---

[1] During their marriage, wife worked one season as a junior college coach.

The judgment also granted wife custody of their two children. At the time of dissolution, before spousal and child support were paid, husband's gross monthly income was $8,530 and wife's was $823 in presumed income.

For the first two years following the dissolution, wife worked part time at a veterinary clinic and as a coach.[2] By May 1998, both parties had remarried. Wife's new husband has three children from an earlier marriage who live with them for half the year. Wife's two children also live with them. Wife's new husband's gross monthly income was approximately $9,983 per month in 1996 and $10,194 per month in 1997. Wife testified that, after her remarriage in 1998, she decided to stay at home with her children for at least another three years and then finish her degree or "something like that." She explained that "at the least" she intended to "get back in the working world," although she was not sure what kind of work she wanted to do.

Husband had also remarried by 1998. His new household consists of himself, his new wife, and her child from a previous relationship who lives with them approximately one half of the time. According to husband's 1997 Uniform Support Affidavit, his new wife had a monthly income of $1,083. Husband's 1998 monthly income was approximately $9,166, giving husband's household a gross monthly income of $10,249.[3]

In March 1998, husband sought to terminate his spousal support obligation because "[p]etitioner has now

---

[2] During the parties' one-year separation from 1995 to 1996, wife worked part time in a veterinary clinic, earning $6.25 an hour. She also worked as a basketball coach. In 1996, she earned $7,658, for a monthly gross income of $638. In 1997, she worked only as a part-time coach and earned $4,328, for a monthly gross of $360 from her wages. The record suggests that wife may continue to pursue some part-time coaching work.

[3] There is dispute over husband's income. Wife notes that husband's adjusted gross income was $192,374 in 1996 and $135,861 in 1997. Husband responds that his income in those years included compensation for moving expenses and other one-time reimbursements related to his move from 3M to Imation. He testified that his gross wages were $8,830 a month and that, because of Imation's poor performance, his wages were frozen. The trial court found at the modification hearing that husband's income was $110,000 a year, or $9,166 a month. We accept the trial court's finding.

remarried and, therefore, the purpose for which spousal support was awarded no longer exists." A hearing was held on husband's motion in May 1998. The trial court found that

"1)   Spousal support was ordered based in part upon the fact that Wife did not pursue career opportunities * * * to stay home with the parties' children.

"2)   Wife can obtain a teaching credential with approximately 1 year of additional schooling.

"3)   Husband's income is $110,000 per year. Wife's earning capacity is $15,000 per year.

"4)   Wife does not intend to return to school or work full-time until the children get older."

Based on those findings, the court modified the dissolution judgment, lowering spousal support to $500 per month for the next two years, $700 per month for the third year, and $1,400 per month for the last year of support. The increased payment in the last year was intended "to offset anticipated education costs."

On appeal, the parties agree that wife's remarriage justified some modification of husband's spousal support obligation. They disagree on how great a modification is appropriate. Husband argues that because wife's remarriage satisfied the purposes of the original award of spousal support, support should be terminated. In large part, husband's argument is based on the proposition that because wife's work and educational goals changed after her remarriage, the needs that prompted the trial court to award spousal support initially are no longer present. He argues alternatively that her new husband's income is sufficient to satisfy those needs to the extent they remain. Wife argues that husband has failed to carry his burden of proof to show that changed circumstances warrant termination of spousal support. Her argument is based primarily on the proposition that her new husband's income is diminished by the larger family he now supports.

The Supreme Court explained in *Bates and Bates*, 303 Or 40, 46, 733 P2d 383 (1987), that although "remarriage of a supported spouse will not always supplant the purposes behind the initial award" of spousal support, "[s]upport

should be terminated when the purposes of the initial award have been met." Under *Bates*, the first question is what were the purposes of the award of spousal support. After those purposes are identified, the remaining question is whether the remarriage meets them.

At the time of the original award, wife anticipated having to work. Because she had stayed at home during her marriage, however, she lacked the training and job skills she otherwise could have obtained. The purpose of the initial award was to provide her with financial support while she gained those skills. The trial court accordingly stepped down spousal support after three years because it "anticipated that her earning potential will increase after she attains * * * certification [as a veterinarian's assistant] or other advanced training" and discontinued all spousal support after six years. *Compare Bishop and Bishop*, 137 Or App 112, 117, 903 P2d 383 (1995) (four-year stepped down support award intended to assist wife while she obtained a graduate degree and looked for full-time employment); *Hoag and Hoag*, 122 Or App 230, 234, 857 P2d 208 (1993) (seven-year stepped down spousal support award intended to permit wife to complete her education and make transition to self-sufficiency).

■ The purpose of the original award of spousal support has either been satisfied or obviated. To the extent that the higher payments for the first three years were intended to provide wife with an opportunity to obtain additional training, *see Grove and Grove*, 280 Or 341, 358, 571 P2d 477 (1977), wife had that opportunity and so far has chosen not to seek training.[4] To the extent the award was intended to provide wife with support while she gained experience working full time, wife has chosen not to pursue that course since she remarried. *See Stephens-Tiley and Stephens-Tiley*, 50 Or App 503, 623 P2d 1105 (1981). The reasons for the trial court's initial award of spousal support have largely diminished, and the possibility that wife will either seek additional training

---

[4] The judgment provided for higher monthly payments for the first three years. Wife received those higher payments for two years but chose not to "obtai[n] certification as a veterinarian assistant or other advanced training," as the trial court's award anticipated.

or return to the work force is, on this record, speculative at best.

■      The remaining question is whether the income available to wife and her new family allows her to maintain a standard of living that is not overly disproportionate to the one she enjoyed during her former marriage. *See Bates*, 303 Or at 47-48; *Stephens-Tilley*, 50 Or App at 507-08. Settled principles guide our inquiry. The original support award presumptively reflects the most equitable distribution of income between the parties. *Bates*, 303 Or at 47. Husband has the burden of proving that the income now available to wife meets that standard; that is, we do not presume either that new husband's income is available to wife or that it satisfies the standard in light of her new family's needs. *Ganger and Little*, 139 Or App 350, 354-55, 911 P2d 1276 (1996).

We find that, on this record, new husband's resources are in fact available to wife. *See Bates*, 303 Or at 47-48; *Essig and Essig*, 128 Or App 67, 69, 874 P2d 1357 (1994). They also provide her with the same or greater level of income than the original award of spousal support. After the dissolution judgment, wife had $3,528 a month in gross income[5] to support three people. After her remarriage, wife's new family has $12,596 a month in gross income[6] to support approximately six people—wife, wife's two children, new husband, and new husband's three children who live with them half the year. After deducting new husband's child support payments[7] and considering the additional expenses attributable to new husband and his three children, we conclude that the remaining income available to wife easily exceeds the income that was available to her and her two children under the original decree of dissolution. *See Bates*, 303 Or at 47-48; *Hall and Hall*, 86 Or App 51, 54-55, 738 P2d 218 (1987).[8]

---

[5] That figure is based on $1,625 in spousal support, $823 in presumed income, and $1,080 in child support.

[6] That figure is based on $10,194 in new husband's income, $1,250 in presumed income based on the trial court's findings, and $1,142 in child support.

[7] Wife's attorney acknowledged during his opening statement at the modification hearing that new husband has no spousal support obligation.

[8] The number of persons in a supported spouse's new family affects how much income is available to that spouse. Neither the Supreme Court nor this court,

Because the purposes of the original award of spousal support have been satisfied, husband's obligation to pay spousal support should be terminated.[9]

Reversed and remanded.

· · ·

---

however, has attempted to calculate that effect precisely. *See Bates*, 303 Or at 47-48 (assuming that one person's expenses who was substituted for another in the household would be comparable); *Hall*, 86 Or App at 55 (even if the new husband's income were divided by two, wife still had more income available after her remarriage than she had before). Rather, we have made a rough estimate, taking into account unique expenses that bear on the income available. *Ganger*, 139 Or App at 354-55 (considering new husband's unique medical costs). In part, our methodology reflects the limitations inherent in predicting a spouse's future needs and expenses based on present economic data. In part, it is a recognition that the economic data is the starting point for an equitable resolution of the parties' rights, not the final answer.

[9] Any modification of spousal support may be made retroactive to the date that the motion to modify was filed. ORS 107.135(5). Under the circumstances, we decline to do so here.