Argued and submitted June 8, 2006, affirmed June 20, 2007

In the Matter of the Marriage of

Pamela Sue LENHART,
*Respondent,*

*and*

Donald Alan LENHART,
*Appellant.*

15-00-22786; A127817

162 P3d 292

Jeffrey E. Potter argued the cause for appellant. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Steven C. Baldwin argued the cause for respondent. With him on the brief was Watkinson Laird Rubenstein Baldwin & Burgess, P.C.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Husband appeals from the trial court's supplemental judgment denying his motion to modify a dissolution judgment. Husband moved to terminate or substantially decrease his obligation to pay spousal maintenance support and his obligation to maintain a life insurance policy for wife's benefit. The trial court found that there was no substantial change of circumstances warranting modification. We review *de novo*, ORS 19.415(3), and affirm.

The relevant facts regarding the dissolution are largely undisputed. During their 30-year marriage, husband earned the family's income while wife primarily devoted her energies to homemaking. When the marriage was dissolved in September 2001, wife was awarded, among other things, the family home; transitional, maintenance, and compensatory support; and interests in certain investment and retirement accounts.

At the time of the dissolution, husband was 57 years old and earned more than $11,000 per month, plus an annual bonus ranging from $20,000 to $64,000. Wife, who was 53 years old, earned no income but had plans to obtain a bachelor's degree in English and to enter the job market as an editor. To allow wife to complete her education, the court awarded transitional support of $1,500 per month for 19 months and $500 per month for two years after that.

The parties made roughly comparable estimates of what wife's earning capacity would be after she obtained her degree. According to wife's trial memorandum, she could earn between $2,021 and $4,893 per month. Husband's memorandum placed wife's earning capacity within that range, estimating that wife could earn $3,300 per month as a teacher.

The dissolution court found that wife's earning capacity would never approach husband's, but it did not make specific findings about how much she could earn. Based on the length of the marriage, wife's age and lack of work experience, and the disparity in the parties' earning capacity, the court awarded wife $3,500 per month in indefinite maintenance support. The court explained that wife "require[d]

spousal support in order to have a standard of living that is not disproportionate to the one which she enjoyed during the marriage." The court ordered husband to maintain a $400,000 life insurance policy with wife as the beneficiary for the duration of his duty to pay spousal support. At the time of the dissolution, wife's uniform support affidavit (USA) listed total expenses of $4,644 per month.

In the spring of 2003, wife graduated with honors, earning a bachelor of arts degree in English. While earning her degree, she obtained student loans, which she is repaying. She later completed a six-week program to improve her opportunities for finding work in publishing.

In June 2004, wife remarried. Her new husband, Haseltine, is a lawyer with a gross monthly income of approximately $7,000 to $7,500, though some of that goes toward obligations owed to his former wife. Immediately before marrying, wife and Haseltine entered into a prenuptial agreement. The parties dispute the effect of the prenuptial agreement and whether wife and Haseltine have commingled assets. Wife acknowledges that she and Haseltine "try to share [their] joint expenses between the two of [them]" and that Haseltine reimburses her for his share of expenses and takes her out for dinners.

Before her remarriage, wife sold the family home and used the bulk of the proceeds to buy a house in Missouri, where she and Haseltine live. Wife has no mortgage on the new house. Haseltine contributed approximately $41,000 to the purchase of that home and paid for wife's moving expenses. Their plan at the time of the modification trial was that, after selling his previous home, Haseltine would pay wife enough to increase his investment in the property to 50 percent of the total purchase price, and she would convey to him an interest in the property. Wife and Haseltine split maintenance and repair costs for the new home. According to wife, the purchase price of the new home was lower because the home needed work, which has proved to be more extensive than expected, and the home has fewer amenities than the parties' family home in Oregon.

Wife's health care costs increased substantially due to a temporary but severe allergic reaction that she suffered

after moving to Missouri; her asthma flared and required extensive treatment. She testified that it took her about eight weeks to get back on her feet and that she continued to recuperate after that.

Wife has been unsuccessful in her job search so far and currently performs only *de minimis* editing services. Between 2002 and 2005 (a portion of which time she was in school), she earned only $1,631. Wife attributed her difficulty in finding work to her age, her lack of work experience, and a decline in hiring in the publishing industry. She also testified that she was very ill for several months and did not file any job applications during that time. Wife is not limiting her job search to publishing work but is applying for anything that she thinks she "might remotely be able to do." She identified various efforts to find work, although husband noted that she had not applied for any jobs with Missouri law firms, despite Haseltine's connections in the legal community.

Wife's recent USA identifies total expenses of $5,411 per month, $797 per month more than her 2001 USA. According to wife, because of medical expenses and lack of employment, she now is unable to make ends meet with the $3,500 spousal support. However, wife hoped that, within a year of the modification hearing, she would be able to find entry-level employment and advance to a position that pays enough, with the $3,500 in maintenance support, to cover her expenses.

After wife's remarriage, husband moved to terminate or substantially reduce spousal support and his life insurance obligation. After taking testimony at a February 2005 hearing, the trial court denied husband's motion, holding that there was no substantial change of circumstances. On appeal, husband contends that wife's economic circumstances have substantially changed because, as a result of her remarriage, she shares half of Haseltine's income and her expenses have decreased. Husband further contends that, in calculating wife's income, the court should focus on her earning capacity rather than on her present lack of employment income. For the reasons set forth below, we affirm.

■ A modification of spousal support may be considered when the moving party shows that there has been a substantial change in the parties' economic circumstances. *Ganger and Little*, 139 Or App 350, 354-55, 911 P2d 1276 (1996). Remarriage is not automatic grounds for termination of spousal support. *Bates and Bates*, 303 Or 40, 46, 733 P2d 1363 (1987). Rather, remarriage receives the same treatment as any other change in economic circumstances. Under ORS 107.135(3)(a), "[a] substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support * * *." In determining whether such a change of circumstances exists, we must "consider income opportunities and benefits of the respective parties from all sources[.]" ORS 107.135(4)(a). Income opportunities include "[t]he reasonable opportunity of each party * * * to acquire future income and assets." ORS 107.135(4)(a)(A). A "modification order must be based on the evidence as it exists at the time of the hearing." *Newton and Newton*, 122 Or App 52, 55, 857 P2d 171, *rev den*, 318 Or 25 (1993) (citation omitted).

■ ■ Termination of spousal maintenance support is proper when the purpose of the initial award has been met. *Bates*, 303 Or at 46. For termination of maintenance support, therefore, the first question is what the purpose of the initial award was, and the second question is whether the remarriage fulfills that purpose. *Rubey and Rubey*, 165 Or App 616, 621, 996 P2d 1006 (2000).

Here, the dissolution court concluded that wife "require[d] spousal support in order to have a standard of living that is not disproportionate to the one which she enjoyed during the marriage." The court awarded wife $3,500 per month in indefinite maintenance support to supplement her anticipated salary from a new career. That award presumptively reflects the most equitable distribution of income between the parties. *Hall and Hall*, 86 Or App 51, 55, 738 P2d 218 (1987).

As noted, the modification court found no substantial change in wife's economic circumstances. To determine whether the circumstances have substantially changed, we

begin with the income that the dissolution court anticipated wife would have after completing her education. During the dissolution trial, wife estimated that her earning capacity would be between $2,021 and $4,893 per month, and husband predicted that she could earn $3,300 per month. The court did not make findings regarding wife's earning capacity, other than the findings that wife's earning capacity would never equal husband's and that wife required spousal support to maintain a standard of living not disproportionate to the one that she enjoyed during the marriage. We conclude that the dissolution court anticipated that wife would, after completing her education, have monthly earned income within the range suggested at trial: $2,021 to $4,893.

We next consider whether there have been substantial, unanticipated changes in wife's income since the dissolution trial. Husband contends that, although wife is presently unemployed, her "income," as measured by her earning capacity, has substantially increased. Relying on *Newton*, husband argues that wife's earning capacity determines her income for purposes of the modification analysis. Under the circumstances of this case, we do not believe that husband has shown that wife's earning capacity has caused a substantial change in her economic circumstances. In *Newton*, the obligee-wife moved to increase spousal support after she failed to find employment in her chosen field within one week of completing her education. 122 Or App at 55. We focused on the wife's earning capacity, rather than her actual earnings; the evidence showed that her earning capacity was consistent with what the court had anticipated, and her argument that she was unemployable was premature. *Id.* at 55-57.

Here, by contrast, wife completed her education nearly two years before the modification hearing and has sought employment but, for various reasons, has not yet found any long-term employment. To date, wife's income opportunities from employment have been minimal. The evidence in this record does not suggest that wife's income opportunities are more accurately represented by the projections made in 2001 than by her actual current income, nor does the record show that wife's diligence in her job search to date has been less than would reasonably be anticipated. Indeed, for a significant portion of the eight months between

her remarriage and move to Missouri and the modification hearing, wife was suffering from severe health problems. Additionally, she has noted her lack of any significant employment history and her age (57 at the time of the modification hearing) as factors affecting the success of her job search. Under those circumstances, the record concerning wife's employment prospects is too speculative to support a finding of substantial change in her economic circumstances, and we thus consider wife's actual earnings at the time of the hearing to measure her reasonable income opportunities.

We next consider whether wife has increased income as a result of her marriage to Haseltine. As the Supreme Court said in *Bates*, the first factor in evaluating spousal support after remarriage is the "potential shared income" of the obligee-spouse. 303 Or at 47; *see also Rae and Rae*, 107 Or App 726, 730, 813 P2d 1107 (1991). The potential shared income is weighed against the standard of living that the obligee spouse enjoyed during the marriage. *Bates*, 303 Or at 47.

Husband contends that the prenuptial agreement does not limit wife's access to Haseltine's income, that half of Haseltine's income is available to wife, and that, under Missouri and Oregon law, spouses cannot contract away their right to receive support from one another in any event. Wife responds that, under the prenuptial agreement, she has no right to Haseltine's income and that, in any event, attributing half of Haseltine's income to her would merely replace the income that the dissolution court anticipated she would receive from employment, which she has not yet managed to obtain.

We need not determine to what extent wife's access to Haseltine's income may be limited because, even if half of Haseltine's income is attributed to wife, her economic circumstances have not substantially changed. As discussed, wife's anticipated monthly earned income was between $2,021 and $4,893, with husband predicting monthly income of $3,300; however, wife has not yet been able to obtain such income. Haseltine's gross monthly income is approximately $7,000 to $7,500, so attributing half of that income to wife would result in monthly income to her of $3,500 to $3,750. That amount is

within the range that the dissolution court, in awarding maintenance support, anticipated that wife would earn. Accordingly, attributing half of Haseltine's income to wife does not demonstrate a substantial change in her economic circumstances.

Husband next contends that wife's economic circumstances have changed because her monthly expenses have decreased. Husband aptly points out that, although wife included a $300 monthly expense for retirement savings in her 2005 USA, the standard of living to be continued through maintenance support was not intended to include retirement savings. Nevertheless, because wife's 2005 USA identified total expenses $797 per month higher than her 2001 USA, deducting the $300 retirement savings from wife's expenses does not result in a decrease in wife's total expenses since 2001.

Husband contends that wife's total fixed expenses have decreased since her move to Missouri. He correctly points out that her housing costs have decreased.[1] However, in order to arrive at a net decrease in wife's expenses, husband's calculations ignore many of wife's current expenses. He contends that her expenses are lower

> "if the $1,000 per month for attorney fees, $650 per month for unreimbursed medical and pharmaceutical expenses, and $716 per month for prescriptions are ignored. Those are primarily temporary expenses related to this proceeding and asthma and allergy reactions she had to the environment in Missouri when she first moved there * * * which wife will not continue to incur."

Wife responds that, although now "her expenses may be different, they are no less burdensome than they were at the time of [the] dissolution." We agree. Nothing in the record indicates when those expenses are likely to end; we simply have no way of determining how "temporary" those expenses

---

[1] Husband's other arguments about wife's current expenses are unpersuasive. For example, he contends that wife has improved her standard of living since the dissolution trial by replacing the 1994 car that she had at that time with a used 2002 model. Wife replaced her old car with a used car of the same make and model as the old car. As wife points out, cars wear out. Under the circumstances, we are not persuaded that wife's replacement of the car reflects a substantial change in her economic circumstances.

are or when support may cease to be necessary to cover such expenses. Husband cites no authority that would allow us to ignore wife's actual current expenses in favor of an assumption that her expenses will decline. Although modification may be appropriate if and when wife's expenses do decline or if husband can demonstrate that the expenses are in fact temporary, this record does not demonstrate that wife has experienced a substantial downward change in her reasonable and necessary expenses.

In short, husband has not met his burden to prove that wife's economic circumstances have changed sufficiently to justify the termination or modification of spousal support or the life insurance obligation at this time. The trial court did not err by denying his motion and entering judgment accordingly.

Affirmed.