246 P.3d 500 (2011)
240 Or. App. 391
In the Matter of the MARRIAGE OF Cathleen A. BARRON, aka Cathleen Park, Petitioner-Respondent, and
Jeffrey L. Barron, Respondent-Appellant.
961072025; A138072.
Court of Appeals of Oregon.
Argued and Submitted October 6, 2009.
Decided January 12, 2011.
*501 Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were John Bassett and Greene & Markley, P.C.
Ted A. Martin argued the cause and filed the brief for respondent.
Before WOLLHEIM, Presiding Judge, and SERCOMBE, Judge, and DUNCAN, Judge.[*]
DUNCAN, J.
Husband appeals the trial court's supplemental judgment reducing, but not terminating, his spousal support obligation to wife. Husband argues that the trial court should have terminated the support because the purpose of the support has been satisfied. Specifically, husband argues that the purpose of the support was to ensure wife could maintain a certain standard of living and that, as a result of her remarriage, wife has become able to maintain that standard without the support. On de novo review, ORS 19.415 (2007),[1] we agree and, therefore, terminate husband's spousal support obligation.
The relevant facts are as follows. Husband and wife were married for 24 years. They have nine children. Throughout the marriage, husband worked outside of the home and wife was responsible for maintaining the home and raising the children. The parties' marriage was dissolved in April 1998. The dissolution judgment awarded wife custody of the parties' minor children. It also awarded her the family home, $694 in monthly child support, and $1,200 in monthly spousal support.
The dissolution court based the spousal support award on the parties' incomes and earning capacities. In the dissolution judgment, the court explained the basis for the support as follows:
"This is a long term marriage. The wife has remained outside the traditional work force throughout the marriage to maintain *502 the family home and to raise the parties' children. She has suffered extreme professional detriment, has few marketable skills, and requires spousal support. As a result, [spousal support[2]] shall be indefinite."
The dissolution judgment resulted in a monthly household income of $1,410 for husband ($3,304 in earned income minus $694 in child support and $1,200 in spousal support) and $2,933 for wife ($1,039 in potential income plus $694 in child support and $1,200 in spousal support).
In June 2007, wife remarried. In September 2007, husband filed a motion to terminate or reduce his spousal support obligation on the ground that wife's economic circumstances had improved to the point she no longer needed the support. Wife's individual income had not increased in the nine years since the dissolutionshe had remained a homemaker and had no individual income other than the $694 in child support and $1,200 in spousal supportbut her new husband, Park, had a monthly income of $3,574. Wife had sold the family home and she lived with Park, who paid all of her housing expenses. Husband argued that Park's $3,574 income offset wife's need for the $1,200 in spousal support. Husband also argued that wife's economic circumstances had improved because the parties' children had grown and all but the youngest had left home.
Like wife, husband had remarried and his economic circumstances had improved. His monthly earned income had increased from $3,304 to $7,500. Relying on Moser and Gilmore, 184 Or.App. 377, 56 P.3d 417 (2002), husband argued that the increase in his income was irrelevant to whether his spousal support obligation should be terminated or reduced.
Husband argued that modification of his spousal support obligation was governed by ORS 107.135(2)(a) (1997), which was in effect at the time of the dissolution, and which provided:
"A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support."
According to husband, wife's remarriage and resulting improved economic circumstances constituted a "substantial change" justifying termination of his spousal support obligation because the purpose of the support had been to ensure that wife was able to maintain a certain standard of living and that, after her remarriage, wife was able to maintain that standard without the support.
Wife did not dispute that her economic circumstances had improved, but she did dispute that the improvement justified a modification of husband's spousal support obligation. Wife relied on the current version of the modification statute, ORS 107.135(3)(a), as amended and renumbered since the parties' dissolution, which provides:
"A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support, except that an order of compensatory spousal support may only be modified upon a showing of involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse."
(Emphasis added.) The italicized language was added in 1999 as part of a revision of the spousal support statutes that also created three categories of spousal support: transitional, compensatory, and maintenance. Or. Laws 1999, ch. 587, §§ 1-3, codified at ORS 107.105, ORS 107.135. Wife acknowledged that, at the time of the dissolution of the parties' marriage, dissolution courts were not required to categorize support as transitional, compensatory, or maintenance and, therefore, "back in '97 and '98, she couldn't have been asking for one or the other because we didn't make that distinction yet." But, wife argued that, under the current modification statute, ORS 107.135(3)(a), the trial court had *503 to determine whether the spousal support was compensatory support. She further argued that the trial court could not terminate the support if it was compensatory support, but the court could terminate the support if it was maintenance support:
"Either the judgment awarded [wife] compensatory spousal support, in which case [husband] is not now entitled to termination, modification because according to the statute he cannot * * * come in here and show you that he's suffered some extreme unforeseeable economic catastrophe, or that judgment awarded [wife] maintenance spousal support.
"If the court determines that she was awarded maintenance spousal support, then according to the Moser case analysis, indeed it's undisputed that [husband] would be entitled to terminate that maintenance spousal support based upon the numbers upon which we agree, to the extent that the award was for maintenance spousal support."
Husband countered that the statutory language on which wife relied was inapplicable because it was enacted after entry of the parties' dissolution judgment. He argued that the trial court should not attempt to categorize the support using categories that had not been defined at the time the support was awarded.
The trial court accepted wife's argument that ORS 107.135(3)(a) applied, and the court concluded that the support was compensatory support, which could not be modified absent a qualifying reduction in husband's income. But the court found that, because husband had to pay for medical and dental insurance for one of the parties' adult children, "extraordinary circumstances" justified reducing the spousal support from $1,200 to $900.
On appeal, the parties renew the arguments they made in the trial court. Thus, as an initial matter, we must determine which version of the modification statute applies. We conclude that the version in effect at the time of the dissolution, ORS 107.135(2)(a) (1997), applies. As noted, the language on which wife relies was added to the statute in 1999, the year after the dissolution of the parties' marriage. Or. Laws 1999, ch. 587, §§ 1-3. The law that amended the statute specifically provided that the amendments "apply only to petitions for annulment, dissolution or separation filed on or after the effective date of this 1999 Act." Id. § 3; see also Halsey and Halsey, 180 Or. App. 169, 174 n. 6, 41 P.3d 1119 (2002) (explaining that the 1999 amendments providing for three types of spousal support did not "retroactively characterize or affect the spousal support award" made before the effective date of the amendments). Therefore, the amendments are inapplicable, and we apply ORS 107.135(2)(a) (1997).
Thus, the question becomes whether, as husband argues, wife's remarriage constituted a "substantial change in economic circumstances" sufficient for the trial court to reconsider the spousal support award. ORS 107.135(2)(a) (1997); see also Tomos and Tomos, 165 Or.App. 82, 87, 995 P.2d 576 (2000) (an award of spousal support may be modified if there has been a substantial, unanticipated change in circumstances since the time of the earlier award). If there has been such a change, then "`[t]he overriding consideration in determining the appropriate amount of spousal support is what is "just and equitable," * * * under the totality of the circumstances.'" Halsey, 180 Or.App. at 177, 41 P.3d 1119 (quoting Albrich and Albrich, 162 Or.App. 30, 37, 987 P.2d 542 (1999)).
Whether changes in the economic circumstances of an obligee spouse justify termination of spousal support depends on whether the changes satisfy the purposes of the support. Bates and Bates, 303 Or. 40, 46, 733 P.2d 1363 (1987). Thus, when determining whether to terminate support, the first question is what the purpose of the support was, and the second question is whether the changes satisfy that purpose. Rubey and Rubey, 165 Or.App. 616, 621, 996 P.2d 1006 (2000). Remarriage is not, by itself, grounds for termination of spousal support. Id. at 620, 996 P.2d 1006. That is because "[s]ome of the purposes behind spousal support * * * are not altered or ended by remarriage." Bates, 303 Or. at 44, *504 733 P.2d 1363. Thus, in this case, our task is to first determine the purpose of the spousal support award and then to determine whether wife's remarriage and resulting improved economic circumstances satisfy that purpose.
At the time of the parties' dissolution proceedings, spousal support awards were governed by ORS 107.105(1)(d) (1997), which provided, in part:
"Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:
"* * * * *
"(d) For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:
"(A) The length of the marriage;
"(B) The age and the physical and mental health of the parties;
"(C) The contribution by one spouse to the education, training and earning power of the other spouse;
"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;
"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;
"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. In a case of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that is practicable;
"(G) The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;
"* * * * *
"(K) The standard of living established during the marriage;
"* * * * *
"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."
Thus, when awarding spousal support, the dissolution court was to consider, among other things, the length of the parties' marriage; the contribution by one spouse to the education, training, and earning power of the other spouse; the parties' incomes and earning capacities; the effect of the marital roles on the parties' earning capacity; and the standard of living established during the marriage. A court could award a homemaker spouse who had been out of the job market for an extended period of time and, as a result, suffered an economic loss of position from which the spouse would likely never recover, spousal support "as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the *505 marriage, to the extent that that is practicable."[3] ORS 107.105(1)(d)(F) (1997).
As set out above, the dissolution court explained the spousal support award in the judgment as follows:
"This is a long term marriage. The wife has remained outside the traditional work force throughout the marriage to maintain the family home and to raise the parties' children. She has suffered extreme professional detriment, has few marketable skills, and requires spousal support. As a result, [spousal support] shall be indefinite."
The dissolution court's explanation reflects that it was mindful of the ORS 107.105(1)(d) (1997) factors and based the support award on the length of the parties' marriage and the fact that, during the marriage, wife had been a homemaker and, as a result, had been out of the job market for an extended period of time and suffered a loss of economic position from which she was unlikely to recover. Given that the court's explanation mirrors the language of ORS 107.105(1)(d)(F) (1997), we conclude that the purpose of the spousal support award was to ensure that, despite the economic disadvantage wife suffered as a result of the marriage, her standard of living would "not be overly disproportionate to that enjoyed during the marriage." See, e.g., Barlow and Barlow, 149 Or.App. 81, 942 P.2d 290, rev den, 326 Or. 62, 944 P.2d 949 (1997) (spousal support award to wife, who had been out of the job market for 20 years to raise the parties' five children, was "based on the relative incomes of the parties and on wife's need for a reasonable amount of monthly income to maintain an economic standard of living that is not overly disproportionate to what was enjoyed during the marriage").
Having determined that the purpose of the spousal support award to wife was to enable her to maintain a standard of living not overly disproportionate to that enjoyed during the marriage, we must now determine whether wife's remarriage satisfies that purpose. "[T]he first factor in evaluating spousal support after remarriage is the `potential shared income' of the obligee spouse." Lenhart and Lenhart, 213 Or.App. 480, 487, 162 P.3d 292 (2007) (citing Bates, 303 Or. at 47, 733 P.2d 1363). The potential shared income is then weighed against the standard of living that the initial award was intended to ensure for the obligee spouse. Id. If, as a result of remarriage, an obligee's income has increased to the point where, without the spousal support, it is equal to or greater than the income the support was intended to ensure, the support should be terminated, unless it would be inequitable to do so. Bates, 303 Or. at 47-48, 733 P.2d 1363 (terminating support); Halsey, 180 Or.App. at 177-79, 41 P.3d 1119 (holding that, although the wife's income had increased and the increase fully replaced the amount of the spousal support award, termination of the award would not have been "just and equitable" under the totality of the circumstances).
Hall and Hall, 86 Or.App. 51, 738 P.2d 218 (1987), is illustrative. In Hall, the dissolution court presumed $650 in earnings for the wife and awarded her $500 in spousal support for a total monthly income of $1,150. After dissolution, the wife's individual income increased and she remarried. Her new income was $712.50, and her new husband's income was $1,782, for a total potential shared income of $2,494.50. We held that the spousal support should be terminated, explaining:

*506 "If we assume that wife now has available to her one-half of her and her new husband's joint income, or $1,247.25 (excluding spousal support), she is now in a better financial position than she was at the time of the judgment when she had an income of $1,150 (including spousal support). Because wife's available income is greater than that provided by the original judgment, which is presumably the most equitable distribution of income between the parties, there has been a sufficient change in her circumstances to justify the termination of spousal support."
Id. at 55, 738 P.2d 218.
In this case, as in Hall, wife's remarriage has increased her potential shared income. The dissolution judgment was intended to ensure wife an income of $2,239 ($1,039 in presumed income and $1,200 in spousal support). After wife remarried, her potential shared income, excluding spousal support, was $4,613 ($1,039 in presumed income and $3,574 in Park's income). If, as in Hall, we presume that one-half of that potential shared income is available to wife, her income has increased from $2,239 to $2,306.50.[4] Thus, we conclude that, as a result of wife's increased income following her remarriage, the purpose of the spousal support award has been satisfied and the support should be terminated.
We note that wife does not dispute that her economic circumstances have improved. Indeed, as described above, wife acknowledged that, if the support was "maintenance support," then it should be terminated. We have held that, the "aim of indefinite maintenance spousal support is to enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible." Potts and Potts, 217 Or.App. 581, 590, 176 P.3d 1282 (2008). Thus, the support in this case is akin to "maintenance support," which wife has conceded could be terminated.[5]
Judgment modified to terminate spousal support effective on date of entry of appellate judgment; otherwise affirmed.
NOTES
[*] Duncan, J., vice Edmonds, P.J.
[1] ORS 19.415 was amended in 2009. Or. Laws 2009, ch. 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or. Laws 2009, ch. 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415 and the applicable case law.
[2] The dissolution judgment provides that wife shall receive indefinite "social security." We assume, and the parties do not argue otherwise, that this was a scrivener's error.
[3] We note that, although ORS 107.105(1)(d)(F) (1997) provided for spousal support "as compensation" for a loss of economic position, we do not understand that support to be the same as "compensatory support" under the post-1999 spousal support statutory scheme and ORS 107.105(1)(d)(B) in particular. Spousal support awarded under ORS 107.105(1)(d)(F) (1997) was, by the terms of the statute, intended to achieve a particular purpose; it could be awarded "so that the standard of living for the disadvantaged party [would] not be overly disproportionate to that enjoyed during the marriage, to the extent that is practicable." Thus, whether spousal support awarded under ORS 107.105(1)(d)(F) (1997) should be terminated depends on whether that purpose has been satisfied. As such, it differs from spousal support awarded under ORS 107.105(1)(d)(B), which, under ORS 107.135(3)(a), is not dependent on the obligee's standard of living; it can only be terminated if there has been an involuntary, extraordinary, and unanticipated change in the obligor's earning capacity.
[4] The dissolution judgment also awarded wife $694 in child support for as long as a qualifying child lived with her. As such, the judgment was intended to ensure wife and one child an income of $2,933 ($1,039 in presumed income, $1,200 in spousal support, and $694 in child support) or $1,466 per person. If the spousal support is replaced by Park's income, then wife's household income is $5,307 ($1,039 in presumed income, $694 in child support, and $3,574 in Park's income) or $1,769 per person. Thus, on a per person basis, wife's income has also increased since her remarriage. See Bates, 303 Or. at 47-48, 733 P.2d 1363 (comparing household income on a per person basis).
[5] We may make any modification of spousal support retroactive to the date that the motion to modify was filed. ORS 107.135(6). Under the circumstances, we decline to do so here. Spousal support should be terminated as of the date that the appellate judgment is entered.