Argued and submitted March 14, affirmed as modified August 29, 1990

In the Matter of the Marriage of

John Wesley HOWARD,
*Respondent,*
*and*

Mary Lu HOWARD,
*Appellant.*

(15-88-05162; CA A61335)

797 P2d 369

D. Michael Wells, Eugene, argued the cause for appellant. With him on the brief was Hutchinson, Anderson, Cox, Parrish & Coons, P.C., Eugene.

Howard F. Feinman, Eugene, argued the cause and submitted the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Wife appeals from a judgment of dissolution, contending that the trial court erred in failing to award her spousal support and in failing to require husband to contribute toward her attorney fees and costs. We review *de novo* and modify the judgment.

This was a 20-year marriage that produced two children. Early in the marriage, husband worked part-time for several different employers while he pursued a Ph.D. in psychology. After receiving his degree in 1977, he performed consulting and other work. However, he did not use his degree to earn a living after 1979. From 1978 to 1983, he operated a construction business. In 1983, he and a partner began a real estate development business in Alaska that eventually was incorporated. He also made several investments, including the purchase of four properties that he and wife rented out from 1980 to 1983. Before the marriage, wife had completed two years of college. After the marriage, she took some additional credits but never completed a degree program. Until 1984, she performed some part-time work, but her primary role was homemaker.

During that period, the parties developed a comfortable lifestyle. In 1976, they bought six acres of undeveloped land near Brownsville, which eventually was expanded to be a ranch of approximately 90 acres, on which they raised a few horses, cattle and other livestock. They bought several vehicles, owned a Cessna airplane, took vacations and entertained regularly. According to wife, husband's combined personal and business income in 1983 was approximately $158,068. According to husband, however, his *adjusted* gross income for 1983 was $5,307, and in 1982 he lost $47,822. He stated that he and wife were able to maintain their lifestyle by "paying old debts with new ones," because they had excellent credit.

Husband's construction business in Oregon began to lose money in 1982. When it closed in 1983, it had net liabilities of approximately $600,000. According to husband, it was then very apparent that he and wife were in a financial crisis. The parties separated in January, 1984, after 16 years of marriage. Shortly afterwards, after a drastic downturn in the Alaskan economy, husband's real estate development corporation failed. When, in 1985, the parties filed for Chapter 7

bankruptcy, they had assets totalling $513,203 and liabilities totalling $1,589,702. Their debts were finally discharged in 1986. Although the Brownsville property was exempt, it was later foreclosed.

After the separation, husband lived in Alaska, and wife lived in Brownsville with the children. In July, 1984, the children moved to Alaska to live with husband, and one daughter continued to live with him until the trial. The other moved back to live with wife in December, 1984, and remained there until November, 1988, when she moved back to husband's house. In 1985, husband worked as a real estate salesperson, but had little income. He lived with a woman who supported him, and he sent some money to wife for the clothes and expenses of the child who lived with her. He began working for his current employer in 1986, after which, according to him, he made regular child support payments. In 1988, he earned approximately $150,000.

Since the separation, wife has worked part-time as an aerobics instructor. She has lived with three different men, each of whom has supported her. In 1987, she was offered a job as a salesperson at the same dealership at which husband now works. She turned it down, because she did not feel that she would be successful in sales, because it paid only commissions and because she did not want to work evenings and weekends while she was raising her daughter. From June, 1988, until the time of trial, she lived with a man who owns homes in Eugene and Northridge, California, and a condominium at Mammoth Lakes, California. Wife requested spousal support of $2,500 per month for five years or until she had obtained her nursing degree, whichever would occur first; $1,000 per month for one year after that; and $500 per month for a final year. She also requested attorney fees. The trial court found that husband had the financial ability to pay spousal support, but it denied wife's requests.

Wife contends that, in failing to award her spousal support with which she could obtain a nursing degree, the trial court ignored the statutory factors in ORS 107.105(1)(d). According to wife, the parties had a long-term marriage; wife's income and earning capacity are substantially less than husband's; she has contributed to husband's education and earning power; her earning capacity has been impaired because of

her absence from the job market while she performed the role of homemaker; and she needs education or training to become employable at work that will enable her to achieve a standard of living not overly disproportionate to that enjoyed during the marriage. Given those circumstances, she argues, she is entitled to spousal support sufficient to enable her to obtain a nursing degree.

■ We agree. The trial court denied spousal support to wife on several grounds.[1] The first was that it would have awarded her little or no support if the parties had obtained a divorce immediately after their separation. However, the entitlement to or amount of a spousal support award is not determined as of the date of separation. *See, e.g., Monaghan and Monaghan,* 45 Or App 535, 609 P2d 822 (1980). This is not a situation like *Lemke and Lemke,* 289 Or 145, 149, 611 P2d 295 (1980), where spousal support could serve no purpose, because the parties had been separated for 20 years, the wife had supported herself without the husband's help and there was "no reason to infer that the wife's earning capacity was adversely affected by the marriage." Here, regardless of her

---

[1] The trial court found, in pertinent part:

"Separation occurred five years ago. * * * It occurred at a time when the family's finances were at or near rock bottom and shortly thereafter [husband] had zero income for a year. He may have been building something for future sales in a housing market but he had no income.

"If the Court were to determine the amount of spousal support to order at that time it would be minimal or nil.

"* * * * *

"I really don't see that there's a significant difference in opportunity between the two of them to get up off the floor after bankruptcy and continue on with their lives, and at this point I don't see a legal responsibility on the part of the husband to pay spousal support.

"And frankly, her lifestyle today as far as I can determine is as equal to [sic] or better than their lifestyle at the date of separation."

It also stated:

"My finding is that [spousal support] is not legally required. This case is difficult because I am in equity and the mood of an equity court is to quote do equity. And it would be very easy to say that Mr. Howard's got enough money that he can give his wife some of it.

"But I suppose that means that anybody that makes above minimum wage has got enough money to give it to some panhandler on the street and that anybody who makes more money than somebody else has a right to walk in their office and ask for it because it would be equitable."

We agree with wife that it was unwarranted for the trial court to intimate that she occupies a position similar to a panhandler's.

reasons, wife remains without the education or training necessary to support herself "at a standard of living not overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(E); *see also Richardson and Richardson,* 307 Or 370, 769 P2d 179 (1989). Whether she would have received support if the parties had dissolved their marriage immediately after separating is irrelevant.

■ The trial court's second reason for denying support was that, in its view, the parties had separated on a relatively equal basis five years earlier. It is true, as the trial court found, that the parties separated equally in terms of property and income, because each was bankrupt and unemployed. That does not mean, however, that they were equally equipped to build separate careers. At the time of the separation, wife had no degree or significant work experience outside the home. Husband, on the other hand, left the marriage with a Ph.D., extensive experience in construction and a proven record in sales. That background undoubtedly aided him in building a new sales career. Because wife had no similar experience, and because the job that she was offered did not guarantee *any* income, it is entirely speculative whether she could have achieved success similar to his.

■ Finally, the trial court denied wife support on the ground that her present lifestyle is equal to or better than that she enjoyed at the time of separation. In *Ho and Ho,* 93 Or App 421, 424, 762 P2d 344 (1988), we considered whether a party's long-term living arrangement with a domestic associate justified modifying or terminating spousal support. We held that such a relationship, like remarriage, is a circumstance that can justify modification, but it does not necessarily result in termination of spousal support. In either situation, the critical inquiry is whether the purposes for awarding spousal support still exist. *Bates and Bates,* 303 Or 40, 46, 733 P2d 1363 (1987); *Ho and Ho, supra.* A similar analysis must be applied in this a situation, where the dependent spouse is living with a domestic associate at the time of the dissolution.

In this case, the purpose of awarding wife spousal support—to enable her to become economically self-sufficient—continues. According to her, lack of spousal support in the past has given her no choice but to rely on financial assistance from others. She is far from financially secure. As

she points out, her current domestic associate has no legal obligation, present or future, to support her. Moreover, although she was living with him at the time of trial, she testified that it was "improbable, just almost impossible" that she would continue the relationship. Given the length of the marriage, the disparate earning capacities of the parties and wife's contribution to the marriage, she is entitled to an opportunity to pursue a career that will permit her to support herself.[2]

■     Husband argues that the amount of support requested by wife exceeds her needs. According to him, she should attend school in Oregon, where the cost of living is lower than in California, and obtain a two-year instead of a four-year degree. We see no reason to limit her in that manner. We do agree, however, that the amount of her request exceeds her stated needs. Our review indicates that an award of $2,100 per month for one year and $1,750 per month for four additional years or until she obtains her nursing degree, whichever occurs first, will provide her with sufficient funds to obtain the required education.[3]

Wife also contends that the trial court erred in failing to require husband to contribute to her attorney fees. That decision was within the sound discretion of the trial court. *Barron and Barron,* 85 Or App 278, 283, 736 P2d 583 (1987). We find no abuse of that discretion.

Judgment modified to award wife spousal support of $2,100 per month for one year, commencing June 14, 1989, and $1,750 per month for four additional years or until she

---

[2] Husband speculates that wife does not, in fact, intend to pursue a nursing career and will use the support award to augment the already affluent lifestyle that she shares with her current living associate. The record neither supports nor undermines that assertion. Under the circumstances, it is proper to award wife support with which to obtain an education, recognizing that, if she fails to use it for that purpose, husband might obtain a support modification. *See Colter and Colter,* 95 Or App 344, 769 P2d 234 (1989).

[3] The trial court made no finding regarding wife's needs. In her uniform support affidavit, she claimed estimated monthly expenses of $2,011, not including the cost of tuition, which, according to her testimony, is approximately $950 per year in California schools. Her expenses included payments of $100 per month for attorney fees for this case and $250 per month toward debts to her current living associate, past medical bills and attorney fees. An initial award of $2,100 per month should enable wife to pay off those debts in approximately 12 months. After that, her expenses will decrease, requiring less support.

obtains a nursing degree, whichever occurs first; affirmed as modified. Costs to wife.