Argued and submitted March 9, affirmed June 20, 2007

In the Matter of the Marriage of

Jodi M. CHEEVER,
*Petitioner-Respondent,*
*and*

Blair HALPERIN,
*Respondent-Appellant.*

Multnomah County Circuit Court
991272664; A128786

162 P3d 287

Mark Johnson argued the cause for appellant. With him on the opening brief were Camaron Vallepalli and Johnson Renshaw & Lechman-Su PC. With him on the reply brief was Johnson Renshaw & Lechman-Su PC.

Thomas A. Bittner argued the cause for respondent. With him on the brief were Michael J. Fearl and Schulte, Anderson, Downes, Aronson & Bittner P.C.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

■        Husband appeals from a supplemental judgment, pursuant to ORS 107.136, reinstating a previously terminated award of spousal support.[1] We review *de novo*. ORS 19.415(3); ORS 107.405. For the reasons that follow, we determine that, in the totality of the pertinent circumstances, including the purposes of the original award, the reasons for the termination of support, the parties' conduct and circumstances following the termination of support, and the parties' current circumstances at the time of the application for reinstatement, reinstatement was "just and equitable." Accordingly, we affirm.

The following facts are undisputed. Husband and wife were married in June 1987, and the dissolution judgment was entered in December 1999, when husband and wife were both 42. At the time of dissolution, husband was self-employed as a cardiologist, earning approximately $320,000 a year, and wife was employed at Oregon Health and Science University (OHSU) as a histocompatability technologist, earning somewhat less than $45,000 a year.[2] Based on the parties' stipulation, husband was required under the dissolution judgment to pay wife maintenance spousal support of $2,150 per month from September 1999 through August 2014, with a step-down to $1,000 per month from September 2014 through July 2022, when wife would turn 65.

In March 2000, wife married Dickenson, a retired dentist with no income. Dickenson's only significant asset was a sailboat that he purchased with the proceeds from selling his dental practice. Upon marrying, wife and Dickenson decided to live on the sailboat and spend their time sailing

---

[1] ORS 107.136 provides:

"Whenever spousal support has been terminated under ORS 107.135, the court has the power to order reinstatement of the support obligation if:

"(1) The basis for the termination ceases to exist; and

"(2) The reinstatement motion is filed within the period of time support would have been paid had the support obligation not been terminated."

[2] Although the record does not disclose wife's precise earnings as of the time of dissolution, the parties agree that her income at that time approximated, but was slightly lower than, wife's projected income of $45,000 a year at the time she sought reinstatement of support in November 2004.

the South Pacific. Accordingly, wife quit her job at OHSU, sold assets, and traveled with Dickenson for four years.[3] Throughout that time, wife's expenses while living on the boat were "incredibl[y]" lower than her expenses when living with husband.

In March 2000, shortly after her marriage to Dickenson, wife agreed to a termination of husband's spousal support payments. See ORS 107.135(1)(a), (3)(a).[4] The consequent stipulated judgment provided, as pertinent:

"The basis of termination of spousal support is Petitioner's remarriage. Petitioner's new husband is capable of providing support at a level that justifies termination of spousal support. The termination of Respondent's spousal support obligation is without prejudice to Petitioner's rights to reinstatement of support under ORS 107.136."

Over the next four years, husband continued to work as a cardiologist, and his income increased very substantially from approximately $320,000 to approximately $650,000 in 2004. Husband's expenses increased as well; he remarried, had a child with his new wife, and began supporting two stepchildren in college.

In December 2003, wife separated from Dickenson and returned to Oregon, and, in August 2004, they were divorced. At the time of their divorce, Dickenson still had no income and no assets other than his sailboat. Wife did not seek spousal support from Dickenson.

After returning to Oregon, wife resumed her former employment at OHSU, earning approximately $3,600 per

---

[3] While living on the boat, wife worked as a temporary medical technician on two occasions for four months each.

[4] ORS 107.135(1)(a) authorizes a court to "[s]et aside * * * any portion of the judgment that provides * * * for the support of a party." ORS 107.135(3)(a), in turn, provides, in part:

"In a proceeding under this section to reconsider the spousal * * * support provisions of the judgment, the following provisions apply:

"(a) A substantial change in economic circumstances of a party, which may include, but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of [maintenance] support[.]"

month—slightly more than she had earned in the same position four years earlier. Wife's expenses also returned to the same level, approximately $3,700 per month, that they were at the time of her dissolution from husband.

In November 2004, wife filed a motion pursuant to ORS 107.136 to reinstate the terminated award of spousal maintenance support. Wife contended that reinstatement was warranted because the circumstances giving rise to the termination no longer existed, because the purpose of the original support award had not been satisfied, and because husband was fully capable of meeting his previously stipulated obligation.

Husband did not dispute that he was, in fact, financially capable of paying the full amount of support, if the previously terminated award were reinstated. However, husband did contend that reinstatement would not be "just and equitable" because wife had, upon marrying Dickenson, freely chosen a qualitatively different—and much less expensive—lifestyle, and the financial consequences of the failure of that choice were properly and fairly borne by wife, and not by husband, who had moved on with his life.

The trial court rejected husband's arguments and reinstated support to continue on the same terms as originally awarded. The court explained:

"The Oregon Supreme Court's decision in *Grove and Grove*[, 280 Or 341, 571 P2d 477 (1977),] established many years ago that the fact of remarriage by the recipient of spousal support does not automatically end the obligee's right to receive spousal support. The cases since *Grove* have established a series of considerations in such cases. Chief among them is that the trial court should evaluate whether the original purpose of the spousal support has been satisfied by the circumstances of Wife in her new marriage. * * * With *Grove*, Wife's remarriage ends the support only if she no longer needs it to secure her standard of living.

"With ORS 107.136, the supported ex spouse's rights as determined [in] the Judgment continue for the stated duration of the spousal support and may [be] reinstated so long as the maintenance of her standard of living would require.

"The purpose for which spousal support was provided as between these parties was clearly for maintenance of the standard of living the parties enjoyed during their marriage. This Court finds that with the dissolution of the intervening marriage, the purpose for the award of spousal support remains.

"Other than whether the purpose of the support has been satisfied, what other consideration could illuminate the process of applying this statute? Considerations of bad faith have no role in this case. Ability to pay is not an issue here. [Husband's] right to get on with his life free from the possibility that support would be reinstated in the future is an argument against the enactment of this law, not a principle in its application.

"[Wife] is in virtually identical circumstances to those which existed at the time of Dissolution. [Husband] agreed to pay [wife] spousal support for 25 years. He got a four year break."

The trial court subsequently entered a supplemental judgment, reinstating spousal support effective April 1, 2005, on the same terms as the original judgment.[5]

On appeal, husband challenges the trial court's reinstatement of maintenance spousal support. Husband, as we understand it, advances several interlocking arguments. *First*, judicial exercise of the "power" under ORS 107.136 to reinstate a terminated award of spousal support must, as a contextual matter, be "just and equitable." *Second*, as a matter of law, "just and equitable" consideration requires reference not only to the original purposes for the award of spousal support and the parties' current circumstances, but also to the reasons for terminating the support award and to circumstances that transpired in the interim. That is especially so when the basis for termination was a subsequent marriage and the catalyst for seeking reinstatement is the dissolution of that marriage. *Third*, the trial court here erred by focusing exclusively on whether the purposes of the spousal support award had been satisfied. *Fourth*, when all pertinent circumstances, including those pertaining to the termination of the

---

[5] Given that disposition, husband did not pay maintenance spousal support for five years.

support award and the parties' subsequent conduct, are considered, the "just and equitable" result is to deny reinstatement:

"Wife has changed her mind about the choices she made. No longer content simply to sail the seas, she craves instead a return to the more comfortable lifestyle that she enjoyed while married to her first husband. Gone is the more frugal lifestyle she chose while married to Dickenson. Wife has made a number of decisions, taken a number of affirmative steps, that lead her now back to her first husband for support. Wife is perfectly capable of supporting herself in her chosen lifestyle. It is neither just nor equitable that husband now be obligated to support wife in a more expensive one."

Wife concurs that the court's exercise of the "power" to reinstate under ORS 107.136 must comport with what is "just and equitable under all of the circumstances." In that regard, wife emphasizes that there is no suggestion of any lack of good faith on her part with respect to the termination of support and her application for reinstatement. Wife further emphasizes that the original purpose of the award—to maintain her marital standard of living—has not been fulfilled. Specifically, wife points out that she has returned to her previous job, earning roughly the same salary. Finally, wife emphasizes that it is undisputed that husband remains fully capable of paying the support award—and, indeed, that husband's income "doubled" in the interim.

ORS 107.136 provides:

"Whenever spousal support has been terminated under ORS 107.135, the court has the power to order reinstatement of the support obligation if:

"(1)   The basis for the termination ceases to exist; and

"(2)   The reinstatement motion is filed within the period of time support would have been paid had the support obligation not been terminated."

We begin with the structure and text of the statute. The statute states that the court "has the *power* to order reinstatement" (emphasis added) if two conjunctive conditions (neither of which is contested here) are satisfied. Beyond that threshold, however, the design of the statute is remarkably

open-ended. The statute does not, for example, state that the court "shall" order reinstatement if the conjunctive conditions are met; rather, it merely states that the court has "the power" to do so. That, in turn, suggests that the court can, but need not, order reinstatement—*i.e.*, at least implicitly, depending on the circumstances, the court can decline to exercise its "power," can order complete reinstatement, or can order partial reinstatement of the terminated support award.

"Power" is an amorphous term. Rather than engaging in the frequently vacuous and innately pedantic exercise of canvassing dictionary definitions, it suffices to say that, in this context, "power" connotes an amalgam of authority and ability.[6] On the face of the statute, if the prerequisite conditions are met, the "power" conferred is, ostensibly, unqualified. The statutory text prescribes no principles limiting or guiding its exercise.

But ORS 107.136 was not enacted in a vacuum. Rather, as the parties here fully appreciate, the contemporaneous context at the time that ORS 107.136 was enacted in 1991,[7] included the then-extant statutes governing original awards of spousal support, ORS 107.105(1)(d) (1991), and vacations or modifications of provisions of dissolution judgments, ORS 107.135 (1991). The former included a "just and equitable" requirement—and had since its enactment in 1971.[8] Moreover, judicial decisions construing and applying the operative "change of circumstances" language of the latter[9] held that "remarriage is not, as a matter of law, grounds

---

[6] For those who prefer to "look it up," see *Webster's Third New Int'l Dictionary* 1778-79 (unabridged ed 2002) (defining "power" as, *inter alia*, "a position of ascendancy" and "a capability of acting or of producing an effect").

[7] *See* Or Laws 1991, ch 888, § 1.

[8] *See* Or Laws 1971, ch 280, § 13. In the original 1971 version of the statute, the substance of paragraph (1)(c) addressed awards of spousal support and included the "just and equitable" language.

That requirement continues to be embodied—and has been amplified—in the present, substantially amended statute. *See* ORS 107.105(1)(d)(A)(vii) (in awarding transitional spousal support, court is to consider "[a]ny other factors the court deems just and equitable"); ORS 107.105(1)(d)(B)(vi) (same with respect to award of compensatory spousal support); ORS 107.105(1)(d)(C)(xi) (same with respect to award of maintenance spousal support).

[9] The "change of circumstances" language became a part of ORS 107.135 in 1983. *See* Or Laws 1983, ch 728, § 3.

for termination of spousal support." *Bates and Bates*, 303 Or 40, 43, 733 P2d 1363 (1987); *see also Grove and Grove*, 280 Or 341, 356, 571 P2d 477 (1977) (construing "change of circumstances" requirement). Those contextually related statutes and related judicial decisions are appropriate context in defining the scope and contours of the "power" conferred by ORS 107.136. *See generally Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 35, 147 P3d 1154 (2006).

The "power" to reinstate pursuant to ORS 107.136 is, thus, contextually qualified and circumscribed. The touchstone of a court's exercise of that power must be what is "just and equitable" in the totality of the parties' circumstances. As amplified below, that determination can fairly implicate the purposes of the original award, the circumstances giving rise to the termination, the parties' circumstances and conduct in the interim, and their circumstances at the time reinstatement is sought. Further, the fact that the catalyst for termination was the recipient spouse's remarriage and consequent change of circumstances does not, in and of itself, preclude reinstatement following dissolution of that marriage.[10]

With that understanding of ORS 107.136, we turn to the substance of the parties' arguments. Stripped to its essentials, husband's position seems to reduce to two overarching propositions: (1) The trial court based reinstatement exclusively on its determination that the original purpose of the support award remained unsatisfied and, in so doing, failed to address other considerations material to whether reinstatement was "just and equitable." (2) As a matter of justice and equity, wife, effectively, should "reap what she

---

[10] The parties have submitted excerpts of the 1991 legislative history that refer to the possible effect of an intervening marriage and divorce. *See, e.g.*, Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2445, Feb 1, 1991, Tape 16, Side B (statement of Rep Tom Mason and statement of Paul Saucy); Tape Recording, House Committee on Judiciary, HB 2445, Feb 15, 1991, Tape 19, Side A (statements of Reps Del Parks and Tom Mason); Tape Recording, Senate Committee on Judiciary, HB 2445, May 22, 1991, Tape 179, Side B (statements of Paul Saucy and Mark Kramer).

The legislative history is, frankly, unenlightening. At most, those statements suggest that, on occasion, the circumstances attending the dissolution of a failed intervening marriage might be pertinent in considering reinstatement under ORS 107.136. Certainly, nothing in ORS 107.136 as enacted precludes the court, as a categorical matter, from ordering reinstatement of support following the failure of an intervening marriage.

has sown"—that is, wife opted for her reduced lifestyle upon marrying Dickenson, and her return to her former lifestyle is a matter entirely of her own choosing.

Neither of those contentions is persuasive. First, even if husband's criticism of the trial court's reasoning were correct, it would ultimately be largely immaterial, given that our review is *de novo*. Further, we do not understand the trial court to have focused exclusively on whether the original purpose of the support award had been satisfied—although that is, certainly, a proper "just and equitable" consideration guiding the exercise of the reinstatement "power" (and husband does not contend otherwise). Rather, the trial court also expressly observed that concerns about "bad faith [had] no role in this case"; that "[a]bility to pay is not an issue here"; and that husband's desire "to get on with his life free from the possibility that support would be reinstated" could not be reconciled with the very existence of ORS 107.136. Each of those additional considerations pertain to whether reinstatement of support in this case was "just and equitable."

■    In all events, on *de novo* review, we agree with the trial court that reinstatement of support is warranted. Wife is in almost exactly the same position that she was between December 1999 and March 2000, with roughly the same income and the same expenses. Husband's ability to pay has not declined; in fact, it has increased. Now, as then, support in the full amount awarded is necessary for wife to be able to maintain the standard of living the parties enjoyed during their marriage. Nor do we understand why, as a matter of justice and equity, wife's relatively short-term pursuit of a reduced lifestyle that did not require maintenance support should irrevocably relieve husband from reinstatement of a stipulated 23-year support obligation, where husband can identify no detriment (other than resumption of the obligation) from reinstatement. In the totality of the circumstances, reinstatement of the award of maintenance spousal support to wife is just and equitable.

Affirmed.