Argued and submitted August 7, 2007, on appeal, reversed and remanded with directions to award wife maintenance spousal support of $2,000 per month from December 8, 2005 to January 8, 2008, and of $1,250 per month indefinitely thereafter; denial of attorney fees to wife vacated; otherwise affirmed; on cross-appeal, reversed and remanded for determination of wife's child support obligation December 26, 2007

In the Matter of the Marriage of

Denise L. UHDE,
*Petitioner-Appellant
Cross-Respondent,*

*and*

Jack B. UHDE,
*Respondent-Respondent
Cross-Appellant.*

Lincoln County Circuit Court
010361; A130945

175 P3d 511

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Mark Johnson argued the cause for respondent - cross-appellant. With him on the brief were Johnson Renshaw & Lechman-Su PC.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Wife appeals, and husband conditionally cross-appeals, from a judgment of dissolution of marriage. Wife asserts that the trial court erred in denying her an award of maintenance spousal support, in requiring her to be solely responsible for transporting the parties' children for her parenting time, and in denying her request for attorney fees. On cross-appeal, husband argues that, if wife is awarded spousal support on appeal, she should be required to pay child support. Although we affirm the trial court's decision with respect to transportation for parenting time, we conclude that the trial court erred in denying wife maintenance spousal support pursuant to ORS 107.105(1)(d)(C).[1] That disposition requires a remand for reconsideration of wife's asserted

---

[1] ORS 107.105(1) provides, in part:

"Whenever the court renders a judgment of marital * * * dissolution * * *, the court may provide in the judgment:

"* * * * *

"(d)    For spousal support, an amount of money for a period of time as may be just and equitable for one party to contribute to the other, in gross or in installments or both. * * * In making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision. The court may order:

"* * * * *

"(C)    Spousal maintenance as a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to be considered by the court in awarding spousal maintenance include but are not limited to:

"(i)    The duration of the marriage;

"(ii)    The age of the parties;

"(iii)    The health of the parties, including their physical, mental and emotional condition;

"(iv)    The standard of living established during the marriage;

"(v)    The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)    A party's work experience;

"(viii)    The financial needs and resources of each party;

"(ix)    The tax consequences to each party;

"(x)    A party's custodial and child support responsibilities; and

"(xi)    Any other factors the court deems just and equitable."

entitlement to attorney fees. Finally, with respect to the cross-appeal, because wife is entitled to an award of maintenance spousal support, we remand for the trial court to determine wife's child support obligation in light of our disposition. We review *de novo*, ORS 19.415(3); *see Dennis and Dennis*, 199 Or App 90, 92 n 2, 110 P3d 607 (2005), and find that the material facts are as follows:

Husband and wife were married in December 1989. At the time of the dissolution trial in December 2003, husband was 46 and wife was 42. Husband has a post-graduate degree and worked throughout the marriage in a variety of administrative positions. At the time of the trial, he was the manager of information systems development at the Georgia Pacific lumber mill in Toledo, Oregon. In that position, husband earned an annual base salary of $81,100, which was augmented by bonuses, yielding total annual compensation of approximately $110,000.

Wife suffers from bipolar disorder, which is being managed through therapy and medications. She has completed high school and has accumulated 80 college credits, without obtaining a degree. Although wife is an accomplished violinist who has played on occasion with local orchestras, she has no history of significant employment outside of the home and has never held employment that would have permitted her to be self-sufficient. Following the birth of the parties' first child in 1991, the parties agreed that wife would stay at home full time.[2]

The parties separated in January 2001, with husband moving out of the family residence. Two weeks later, Larry Friesen began "visiting" wife and "staying as a guest," moving into the family residence in April 2001. Sometime after Friesen moved in and before September 2001—the record is unclear as to precisely when—the parties' three children began living with husband and were continuing to do so at the time of the trial in late 2003. In September 2001, wife and Friesen moved to Vancouver, Washington, where they were still living at the time of trial.

___

[2] The parties have three children who, at the time of the trial, were 11, 10, and 6 years old.

The continuing relationship between wife and Friesen was the dispositive consideration in the trial court's decision not to award wife any maintenance support—and, consequently, is central to our review of that determination. Accordingly, we recount in detail our findings regarding the nature of that relationship and of Friesen's financial contributions towards wife's financial needs. From no later than April 2001 and through the trial in this matter more than two and one-half years later, wife and Friesen lived, and continued to live, in a committed relationship akin, in many essential aspects, to a domestic partnership or marriage. As of the time of trial, there was every indication that that relationship would continue.

Throughout their period of cohabitation, Friesen contributed substantially toward the payment of wife's living expenses. Although the record is not entirely clear, it appears that, from the time that Friesen and wife moved to Vancouver, he paid all, or virtually all, of her expenses for housing (she lived with him without paying rent), food, and utility expenses. However, husband's health insurer continued to provide coverage for wife's medical and psychiatric expenses, including the very substantial cost of some medications. In addition, husband continued to make monthly payments of $225 on wife's vehicle.[3]

The dissolution trial occurred in December 2003, nearly three years after the parties separated. At trial, wife sought an award of maintenance spousal support of $2,750 a month for 36 months, $2,000 a month for the next 24 months, and $1,500 a month indefinitely thereafter. Wife also sought an order directing husband to participate equally in the round-trip transportation of the children from Newport to Vancouver for her parenting time, as well as an award of attorney fees. On appeal, wife challenges the trial court's

---

[3] Over time, both before and after the parties' separation, wife incurred credit card debt of approximately $32,000, requiring minimum monthly payments of $735. The record is again unclear as to precisely what expenditures contributed to that debt and how much of that debt was incurred before or after the parties' separation. Although there is some dispute in the record as to who has paid the monthly obligations on the debts, we find it credible that Friesen has made nearly all of wife's minimum payments.

adverse disposition on each of those matters, with principal emphasis on the trial court's determination that she was not entitled to any award of maintenance spousal support.[4]

In determining that wife was not entitled to any maintenance spousal support, the trial court acknowledged that husband earned approximately $110,000 a year; that wife, because of her mental health constraints, could earn no more than $1,000 a year; and that, given that disparity and other material considerations under ORS 107.105(1)(d)(C), wife would ordinarily be entitled to a substantial award of maintenance spousal support. However, in the trial court's view, wife's continuing relationship with Friesen—and his assumption of at least a very substantial portion of her expenses—effectively abrogated any obligation by husband to pay maintenance support:

> "[Wife] is a woman who has been, and will remain, unable to generate any workplace income. * * * For the balance of her life, she will not be able to survive without being supported financially by someone else.
>
> "* * * * *
>
> "* * * Wife is a person who is clearly entitled to spousal maintenance. At no time during the marriage did Husband not understand that he was her sole source of income, that he was her sole provider. The dissolution of the marriage does not change her dependence.
>
> "* * * * *
>
> "[Nevertheless], [i]f [under *Bates and Bates*, 303 Or 40, 733 P2d 1363 (1987),] remarriage or its equivalent may constitute a 'change of circumstances' justifying termination of a spousal support obligation, they surely represent factors which would warrant ordering no spousal support in the first instance.
>
> "* * * * *
>
> "* * * [T]he testimony and exhibits demonstrate that Mr. Friesen has significant assets and income, such that [wife] will be able to enjoy a lifestyle consistent with that which [husband] provided to her during their years

---

[4] Wife does not challenge the trial court's property division.

together. Had Mr. Friesen come along later, after spousal support had been awarded in this case, that support would be terminated at this juncture because the purposes of the initial award would have been met. Given that, no spousal support should be awarded at this time. In addition to the other benefits of Mr. Friesen's relationship with [wife], he has been, and is, providing what would otherwise be the spousal maintenance that would be [husband's] responsibility."[5]

Wife challenges that disposition. She acknowledges that her continuing relationship with Friesen may be a basis for reducing husband's putative maintenance spousal support obligation—*i.e.*, "the financial assistance that Friesen has given, and may in the future continue to give, needs to be factored into the [spousal support] analysis." However, wife asserts that, given the proper application of ORS 107.105(1)(d)(C) to the totality of her circumstances, the trial court erred in determining that her relationship with Friesen precluded any obligation on husband's part. She concludes that Friesen's financial assistance "in no way is a complete substitute for all support, ever."

Husband remonstrates that Friesen has, effectively, fully assumed the payment of wife's living expenses and that he has the capacity to continue to do so. Consequently, husband reasons, by analogy to cases involving modification of spousal support following the recipient's remarriage, the trial court's decision comported with ORS 107.105(1)(d)(C).

■ We note, at the outset, the unusual, albeit not unprecedented, posture of this case. We and the Oregon Supreme Court have frequently decided cases involving motions to modify or eliminate a spousal support obligation following the recipient's remarriage or post-dissolution participation in a domestic relationship. *Morrison and Morrison*,

---

[5] The trial court's statement that no spousal support should be awarded "*at this time*" (emphasis added) is puzzling. It is axiomatic that, where the court awarded no support, wife would be unable to petition for a modification to allow support if her circumstances subsequently changed—and, particularly, if her relationship with Friesen were to end after the dissolution judgment became final. *See, e.g.*, *Ash and Ash*, 61 Or App 595, 598, 658 P2d 540 (1983) (reversing award of "token spousal support for the purpose of preserving a basis for future increases" in context of modification upon recipient spouse's remarriage).

139 Or App 137, 145, 910 P2d 1176 (1996). *See, e.g., Bates and Bates,* 303 Or 40, 44, 733 P2d 1363 (1987); *Bishop and Bishop,* 137 Or App 112, 903 P2d 383 (1995); *Ho and Ho,* 93 Or App 421, 762 P2d 344 (1988); *Vaughn and Vaughn,* 25 Or App 655, 550 P2d 1243 (1976).[6] The inquiry in such cases is not whether the new relationship "bears the economic earmarks of a marital relationship" but, instead, "whether [the recipient spouse's] anticipated living expenses have been materially reduced because of [the] new living arrangement and whether that arrangement is likely to continue." *Bishop,* 137 Or App at 115. However, we have rarely addressed circumstances in which the new relationship has been established before the dissolution—before the trial court's initial determination of entitlement, if any, to spousal support—rather than after the dissolution. Indeed, it appears that we have only one reported decision in that posture: *Howard and Howard,* 103 Or App 171, 797 P2d 369 (1990).

In *Howard,* the dependent spouse's new partner supported her after she had separated from her husband. The trial court denied spousal support based, in part, on the wife's new relationship. *Id.* at 175. On appeal, we first observed that, even though the issue of the effect of the new relationship arose in a predissolution, rather than post-dissolution, context, "[i]n either situation, the critical inquiry is whether the purposes for awarding spousal support still exist" and, consequently, "[a] similar analysis must be applied * * * where the dependent spouse is living with a domestic associate at the time of the dissolution." *Id.* at 176. We then determined that, although the wife in *Howard* did receive substantial benefits from her new partner, the mere fact that the new partner was supporting her did not mean that her husband had no financial responsibility for her ongoing needs. *Id.* at 176-77. Rather, we recognized that the "lack of spousal support in the past has given [the wife] no choice but to rely on financial assistance from others." *Id.* at 176. Simply because the new partner was paying did not mean

[6] *Accord Cheever and Halperin,* 213 Or App 441, 162 P3d 287 (2007) (addressing reinstatement of previously terminated award of spousal support pursuant to ORS 107.136, following dissolution of recipient spouse's subsequent marriage).

that he would continue to do so, as he had "no legal obligation, present or future, to support her." *Id.* at 177.[7]

Here, we do not understand wife to dispute the foregoing principles and, specifically, that the same considerations that guide the resolution of a motion to modify when the recipient of maintenance spousal support enters into a post-dissolution relationship are properly applied to the initial spousal support determination when a predissolution relationship exists. Indeed, wife acknowledges that her relationship with Friesen "is a basis for lowering, but not eliminating" (or, rather, failing to award any) spousal support. Thus, given our finding that there is every indication that the relationship between wife and Friesen will continue, 217 Or App at 262, our inquiry narrows to whether wife's living expenses "have been materially reduced" because of that relationship, including, as a result of Friesen's willingness and ability to assume some of wife's expenses. *Bishop*, 137 Or App at 115.

We begin by observing that, as the trial court acknowledged, but for wife's relationship with Friesen, a variety of the criteria listed in ORS 107.105(1)(d)(C) would strongly, indeed conclusively, militate in favor of a substantial award of maintenance spousal support. The parties had been married 11 years at the time of the separation (albeit 16 years by the time the dissolution judgment was entered) and they had maintained a comfortable standard of living. ORS 107.105(1)(d)(C)(i), (iv). Husband earns approximately $110,000 a year, while wife, because of her mental illness, has no meaningful employment history and no reasonable prospects for future employment and will continue to incur significant mental healthcare-related expenses. ORS 107.105(1)(d)(C)(iii), (v), (vi), (vii). Although the parties engage in what are essentially marginal skirmishes about some of those considerations, the core of their dispute is the proper application of ORS 107.105(1)(d)(C)(viii): "The financial needs and resources of each party[.]"

We turn to wife's "financial needs" and to the extent that Friesen properly constitutes a "resource" for wife. In her

---

[7] Although *Howard* involved what would presently be denominated as "transitional spousal support," *see* 103 Or App at 177, we regard our discussion there as being instructive in this case.

uniform support affidavit, wife claimed expenses totaling $5,095 per month. Those claimed expenses included, among other items, housing ($821), utilities ($185), transportation ($450), health insurance ($1,000), childcare ($432), food ($250), clothing ($100), community college tuition ($440), and debt service ($735).

Husband counters that some of the claimed expenses are illusory and that, although others are real, wife is not actually incurring them because Friesen is paying them. For example, with respect to the claimed expense for monthly tuition costs, husband points out that, although wife stated that she had attended classes at Clark College for one semester, she also acknowledged that she had no immediate plans to attend more classes.

With respect to claimed expenses that Friesen assumes, husband emphasizes that, as in *Bishop*, wife is staying in Friesen's home rent-free and that Friesen is paying the utility and phone bills for the residence.[8] Husband further asserts that Friesen has assumed other expenses, including those for food and clothing.

We agree with husband that some of wife's claimed expenses are impermissibly speculative and that Friesen has assumed several other substantial expenses. Nevertheless, unlike the trial court, we do not conclude that those circumstances excuse husband from any obligation to pay maintenance spousal support. That is so for several reasons.

First, although the record is not entirely clear, it appears that Friesen was not paying all of wife's expenses during their continuing cohabitation. Rather, and specifically, although Friesen ultimately assumed the minimum monthly payments on wife's credit card debt, *see* 217 Or App at 262 n 3, it appears that some portion of that debt was incurred after the parties' separation to pay wife's continuing expenses.[9]

---

[8] *See Bishop*, 137 Or App at 116 ("[B]ecause of the cohabitation, wife's reasonable living expenses are substantially less * * *. In particular, wife is living rent-free with boyfriend and, thus, is not incurring housing expenses.").

[9] We do not understand the trial court to have rendered any findings, much less credibility-based findings, as to the substance of wife's credit card debt or when it was incurred.

Second, the record establishes that, upon entry of the dissolution judgment or shortly thereafter, wife would become obligated for significant expenses—specifically healthcare costs and car payments—that husband (or his healthcare insurer) had been paying. Specifically, wife will become responsible for nearly $1,000 per month for her health insurance and medication costs. She will also be responsible for $225 in monthly car payments. Friesen did not state that he was willing to assume these additional expenses. To the contrary, he testified that he was "taking things one day at a time" and that he anticipated that husband would contribute towards some of wife's support.

Third, the record is unclear as to the extent of Friesen's continuing capacity to assume wife's expenses, at least without liquidating his own assets. Before Friesen and wife began living together, he had retired from his employment. On this record, it appears that his only source of funds has been from withdrawals from retirement accounts and the proceeds from the sale of two properties. In addition, in 2008, if he so elects, Friesen will begin receiving pension payments of $3,672 a month. As a "just and equitable" matter, husband should not be absolved from any support obligation while Friesen is required to liquidate his preexisting assets in order to meet wife's expenses. We further note that, to the extent the record is unclear regarding Friesen's assets and resources, that uncertainty fairly cuts against husband who, as an essentially "defensive" matter, has pointed to Friesen as an alternative financial "resource" for wife.[10]

The foregoing considerations, individually and collectively, counsel that husband is properly obligated to pay some level of maintenance spousal support. We cannot, and will not, pretend—especially on this record—that the determination of the amount of support is an exact exercise. That is so not only because of the imprecision of the parties' proof, but also because at least one consideration under ORS 107.105(1)(d)(C)(x)—"[a] party's custodial and child support responsibilities"—very strongly favors father. Specifically,

---

[10] Friesen produced various income tax returns in response to a discovery request, and counsel for husband took Friesen's deposition. In addition, Friesen testified at trial and was subject to cross-examination by husband's attorney.

husband is the primary parent and sole financial provider for the parties' three sons.

We determine, after considering the totality of the criteria prescribed in ORS 107.105(1)(d)(C)(i) - (xi), that wife is entitled to receive maintenance support of $2,000 a month from the date of dissolution (December 8, 2005) until January 8, 2008, and $1,250 a month indefinitely thereafter.[11]

■     Wife next assigns error to the trial court's decision requiring her to provide round-trip transportation between Newport and Vancouver for her parenting time. Wife argues that, as a matter of "fairness" between the parties and benefit to the children, the parties should share the burden of providing transportation. We affirm. The trial court's disposition comported with Lincoln County Circuit Court Supplemental Local Rules, Form 8.075 § (1)(vii), which specifies that the noncustodial parent be responsible for transportation to and from parenting time. Further, to the extent that considerations of fairness are properly implicated, we agree with husband that the equities militate in his favor. Husband, the primary parent, works full time, and wife is not working; consequently, it is reasonable to require wife to assume the burden of transportation associated with her parenting time.

Finally, on appeal, wife assigns error to the trial court's denial of attorney fees. Because we have reversed the trial court's determination that wife was not entitled to spousal support, we remand for the trial court to reconsider wife's asserted entitlement to attorney fees in light of that disposition. *See Proctor and Proctor*, 203 Or App 499, 125 P3d 801 (2005), *adh'd to as modified on recons*, 204 Or App 250, 129 P3d 186, *rev den*, 340 Or 672 (2006).

■     As noted, husband also raises a conditional cross-appeal, arguing that, if we award wife spousal support, we must remand the case to the trial court for it to calculate the proper amount of child support that wife must pay. Wife agrees, as do we. *See Cookson and Cookson*, 134 Or App 357,

---

[11] The reduction of support beginning in January 2008 is because of the pension payments that will be available to Friesen beginning on January 1, 2008.

364, 895 P2d 345 (1995) (remanding the case for recalculation of child support "to take into account the award of spousal support" as adjusted on appeal). Accordingly, we remand the case to the trial court to determine wife's child support obligation in light of the spousal support directed on appeal.

On appeal, reversed and remanded with directions to award wife maintenance spousal support of $2,000 per month from December 8, 2005 to January 8, 2008, and of $1,250 per month indefinitely thereafter; denial of attorney fees to wife vacated; otherwise affirmed. On cross-appeal, reversed and remanded for determination of wife's child support obligation.